**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN J. CUNNINGHAM, DAVID KRISTOPHER CIUFFETELLI, BENJAMIN DIDONATO and JOHN RUCKI, JR.,<br><br>　　　　　　　　Plaintiffs,<br><br>-vs.-<br><br>WAWA, INC., RETIREMENT PLANS COMMITTEE OF WAWA, INC., JARED G. CULOTTA, MICHAEL J. ECKHARDT, JAMES MOREY, CATHERINE PULOS, HOWARD B. STOECKEL, DOROTHY SWARTZ, RICHARD D. WOOD, JR., KEVIN WIGGINS and CHRISTOPHER D. WRIGHT.<br><br>　　　　　　　　Defendants,<br><br>and<br><br>WAWA, INC. EMPLOYEE STOCK OWNERSHIP PLAN.<br><br>　　　　Nominal Defendant. | Case No. _____<br><br><br>**COMPLAINT --**<br>**CLASS ACTION** |

Plaintiffs John J. Cunningham, David Kristopher Ciuffetelli, Benjamin DiDonato and John Rucki, Jr., in their individual capacity and on behalf of the Class, hereby allege as follows:

## INTRODUCTION

1.　　This is an action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., on behalf of a Class of certain former employee participants (and their beneficiaries) in the WAWA, INC. EMPLOYEE STOCK OWNERSHIP PLAN (the "ESOP" or "Plan"). This case arises out of (1) the adoption and implementation of a 2015 Amendment to the Plan that eliminated the right of participants who had already terminated employment (and were defined as "Retired" under the Amendment) to hold WAWA stock in the ESOP, (2) the adoption and implementation of a 2014 Amendment to the Plan that forced the

1

liquidation of WAWA stock by participants who terminated employment after January 1, 2015, and (3) the forced liquidation of the WAWA stock of those and other participants with account balances in excess of $5,000 after September 2015 at share prices less than fair market value determined using a common methodology.

2.     This action is related to *Pfeifer, et. al., v. Wawa, Inc., et al.,* No 2:16-cv-00497-PD (E.D. Pa.), as it challenges the same or nearly identical Plan terms, Plan disclosures and fiduciary acts on the same legal theories; however, this action is brought on behalf of participants and beneficiaries who were not members of the Class in *Pfeifer*. While the *Pfeifer* Class included participants who had retired prior to January 1, 2011 and their beneficiaries, and also participants who had terminated employment, but not retired, prior to January 1, 2015 and their beneficiaries, the current Class consists of participants who (1) retired on or after January 1, 2011 but before January 1, 2015 ("Retired Employees") and their beneficiaries, or (2) were hired before January 1, 2014 and terminated employment after January 1, 2015 ("Terminated Pre-2014 Employees") and their beneficiaries and (3) other participants who terminated employment after January 1, 2015, so long as their account balance exceeded $5,000.

3.     The ESOP's primary asset is its equity holdings in WAWA. The ESOP allocates shares of WAWA stock to the individual accounts of Plan participants. The ESOP has long been an important part of the compensation package for WAWA employees. Plaintiffs and other members of the Class contributed to WAWA's success, and were able to share in that success as the value of the WAWA stock holdings in their individual ESOP accounts grew over time.

4.     Until amendments to the Plan in 2014 and 2015, the written instrument of the ESOP provided all former employees had the right to remain as participants in the ESOP and continue to hold WAWA stock in their ESOP accounts after they terminated or retired, at least

until age 68. In communications with Plan participants during the course of their employment, including the updated Summary Plan Descriptions, WAWA and the ESOP fiduciaries promised that participants' right to continue to hold WAWA stock after termination of employment or retirement would not be taken away.

5.      Beginning in 2014, WAWA amended the ESOP in an effort to remove former employees from the Plan. An amendment to the ESOP in 2014, but "effective January 1, 2015" (the "2014 Amendment") required the Trustee to "liquidate the ESOP Stock held in the ESOP Stock Account of any Participant who terminates employment with the Company and all Affiliated Companies *on or after January 1, 2015*." On August 7, 2015, WAWA amended the ESOP again (the "2015 Amendment"), this time to require the Trustee to liquidate the shares for participants who had terminated their employment, or retired, before January 1, 2015. Participants who had terminated without meeting the definition of retirement in the 2015 Amendment prior to January 1, 2015 or who had retired before January 1, 2011, had their accounts liquidated on September 11, 2015 (and were members of the *Pfeifer* Class).

6.      For participants who terminated without meeting the 2015 Amendment's definition of retirement or who had retired on or after January 1, 2011 but before January 1, 2015, the 2015 Amendment required the Trustee to liquidate their accounts beginning in March 2016. These forced sales of WAWA stock and liquidation of ESOP accounts violated ERISA and breached promises that WAWA and the ESOP fiduciaries had made to Plaintiffs and other Retired or Terminated Pre-2014 Employee Participants. In addition, Defendants undervalued the share price at which WAWA purchased these shares back from these participants.

7.      Plaintiffs and other Class Members have been divested of the right to continue to hold WAWA stock in their ESOP accounts until age 68. As a result of Defendants' fiduciary

breaches and violations of ERISA, Plaintiffs and the Class have also lost out on the continued appreciation in value of WAWA stock, and dividends and tax distributions paid to or that will be paid to WAWA shareholders. Plaintiffs and Class Members also received less than the fair market value of the WAWA stock in their ESOP accounts.

8.     As a remedy, Plaintiffs seek to require Defendants to make good to the Plan any losses resulting from fiduciary violations, to restore to the Plan any profits made by the breaching fiduciaries through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

10.     This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this District, and because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process.

11.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in part in this District, the breaches occurred, in whole or in part, in this District, and Defendants may be found in this District.

## PARTIES

### Plaintiffs

12.     Plaintiff John Cunningham is and has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP at all relevant times. Plaintiff John Cunningham was employed by WAWA from October 12, 1982 until September 16, 2011. When Plaintiff's employment ended, he continued to hold the WAWA stock holdings in his ESOP account until

the stock was forcibly liquidated in March 2016. Even though Plaintiff John Cunningham's account in the ESOP has been liquidated, he remains a participant in the ESOP, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he is or may become eligible to receive a benefit from the ESOP as a result of the claims in this Complaint. Plaintiff John Cunningham resides in Mullica Hill, NJ.

13.     Plaintiff David Kristopher Ciuffetelli is and has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP at all relevant times. Plaintiff David Kristopher Ciuffetelli was employed by WAWA from June 29, 2009 until August 2, 2015. When Plaintiff's employment ended, he continued to hold the WAWA stock holdings in his ESOP account until the stock was forcibly liquidated in March 2016. Even though Plaintiff David Kristopher Ciuffetelli's account in the ESOP has been liquidated, he remains a participant in the ESOP, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he is or may become eligible to receive a benefit from the WAWA ESOP as a result of the claims in this Complaint. Plaintiff David Kristopher Ciuffetelli resides in Wilmington, DE.

14.     Plaintiff Ben DiDonato is and has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP at all relevant times. Plaintiff Ben DiDonato was employed by WAWA from March 17, 1982 until September 6, 2013. When Plaintiff's employment ended, he continued to hold the WAWA stock holdings in his ESOP account until the stock was forcibly liquidated in March 2018. Even though Plaintiff Ben DiDonato's account in the ESOP has been liquidated, he remains a participant in the ESOP, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he is or may become eligible to receive a benefit from the ESOP as a result of the claims in this Complaint. Plaintiff Ben DiDonato resides in Louisville, KY.

15.     Plaintiff John Rucki is and has been a participant, as defined in ERISA § 3(7), 29

U.S.C. § 1002(7), in the ESOP at all relevant times. Plaintiff John Rucki was employed by WAWA from July 22, 2003 until January 26, 2015. When Plaintiff's employment ended, he continued to hold the WAWA stock holdings in his ESOP account until the stock was forcibly liquidated in March 2016. Even though Plaintiff John Rucki's account in the ESOP has been liquidated, he remains a participant in the ESOP, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he is or may become eligible to receive a benefit from the ESOP as a result of the claims in this Complaint. Plaintiff John Rucki resides in Pennsville, NJ.

**Defendants**

16.     Defendant WAWA, INC. ("WAWA") is a New Jersey corporation headquartered in Wawa, Pennsylvania. WAWA is the Sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). At all relevant times, WAWA was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. Pursuant to Section 9.1. and 10.1 of the ESOP Plan document, WAWA, acting by appropriate resolution of its Board of Directors, had the power and responsibility for appointing and removing the Trustee and Administrator of the ESOP, and appointing a new Trustee or Trustees and/or Administrator in their place as well as entering into any Trust Agreement. By virtue of these powers, Defendant WAWA had the fiduciary responsibility to monitor the Trustee and Administrator and remedy any fiduciary violations committed by the Trustee and/or Administrator. Defendant WAWA at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

17.     Defendant RETIREMENT PLANS COMMITTEE OF WAWA, INC. ("COMMITTEE") is and has been the named fiduciary of the ESOP and the "administrator" of

the ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), at all relevant times. At all relevant times, Defendant COMMITTEE was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. Defendant COMMITTEE at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). Upon information and belief, the COMMITTEE has six members who are WAWA employees appointed by the Board of Directors of WAWA. Defendant COMMITTEE is an unincorporated organization or association located in Wawa, Pennsylvania.

18.     Defendant JARED G. CULOTTA ("CULOTTA") was a member of the COMMITTEE from at least December 31, 2014 and throughout 2015. During that time, CULOTTA was also the Treasurer and Assistant Secretary of WAWA. At all relevant times, Defendant CULOTTA was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his membership on the COMMITTEE and because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

19.     Defendant MICHAEL J. ECKHARDT ("ECKHARDT") has been a member of the COMMITTEE from at least December 31, 2014 and through at least December 31, 2016. During that time, ECKHARDT was also and still is the current Vice President of Legal and Risk Management and Secretary of WAWA. Defendant ECKHARDT became General Counsel of

WAWA in 2011. Before joining WAWA, Defendant ECKHARDT was an attorney at Dechert

LLP and Pepper Hamilton LLP in the Corporate and Securities groups. As a result of his

membership on the Committee, Defendant ECKHARDT is and was between at least 2015 to the

present a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and

because he exercised discretionary authority or discretionary control respecting management of

the ESOP and/or exercised authority or control respecting management or distribution of the

ESOP's assets, and/or had discretionary authority or discretionary responsibility in the

administration of the ESOP.

20.     Defendant JAMES MOREY ("MOREY") has been a member of the

COMMITTEE from at least December 31, 2014 and through at least December 31, 2016. During

that time, MOREY was also and still is the Senior Vice President, Chief Operations Officer of

WAWA. Between at least 2012 through at least 2013, Defendant MOREY was the Chief

Financial Officer of WAWA. Between 2015 and the present, Defendant MOREY has been a

fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his

membership on the COMMITTEE and because he exercised discretionary authority or

discretionary control respecting management of the ESOP and/or exercised authority or control

respecting management or distribution of the ESOP's assets, and/or had discretionary authority

or discretionary responsibility in the administration of the ESOP.

21.     Defendant CATHERINE PULOS ("PULOS") has been the Chairperson of the

COMMITTEE from at least December 31, 2014 and through at least December 31, 2016.

PULOS also is and has been the Senior Vice President and Chief Financial Officer of WAWA

since at least 2014. Defendant PULOS also has been the Chief People Officer of WAWA since

2010. Defendant PULOS was the Controller for WAWA from 2007 to 2010. Prior to that time,

PULOS spent seven years as an Internal Audit Director for WAWA. Between 2015 and the present, Defendant PULOS is and was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of her membership on the COMMITTEE and because she exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

22.     Defendant DOROTHY SWARTZ ("SWARTZ") has been a member of the COMMITTEE from at least December 31, 2014 and through at least December 31, 2016. SWARTZ has been the Senior Director of Talent Management and Development of WAWA since 1996. Defendant SWARTZ was the Director of Store Operations for WAWA between 2004 and 2009. From 2015 to the present, Defendant SWARTZ was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of her membership on the COMMITTEE and because she exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

23.     Defendant KEVIN WIGGINS ("WIGGINS") has been a member of the COMMITTEE from at least December 31, 2014 and through at least December 31, 2016. WIGGINS was the Senior Director of Finance for WAWA in 2015. Defendant WIGGINS has been the Controller of WAWA since 2012. From 2015 to the present, Defendant WIGGINS has been a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his position on the COMMITTEE and because he exercised discretionary authority or

discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

24.     The COMMITTEE, CULOTTA, ECKHARDT, MOREY, PULOS, SWARTZ, and WIGGINS are collectively referred to as the COMMITTEE DEFENDANTS.

25.     Defendant RICHARD D. WOOD, JR. ("WOOD") has been a Trustee of the ESOP within the meaning of ERISA §403(a), 29 U.S.C. § 1103(a), from at least December 31, 2014 and through at least December 31, 2016. During that time, Defendant WOOD is and was Chairman of the Board of Directors of Defendant WAWA. From at least 2015 to the present, Defendant WOOD was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his position as Trustee of the ESOP and because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

26.     Defendant HOWARD B. STOECKEL ("STOECKEL") has been a Trustee of the ESOP within the meaning of ERISA §403(a), 29 U.S.C. § 1103(a), from at least December 31, 2014 through at least December 31, 2016. Defendant STOECKEL is the former President of Defendant WAWA and currently Vice Chairman of the Board of Directors of Defendant WAWA. From at least 2015 to the present, Defendant STOECKEL was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his position as Trustee of the ESOP and because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or

10

distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

27.    Defendant CHRISTOPHER D. WRIGHT ("WRIGHT") has been a Trustee of the ESOP within the meaning of ERISA §403(a), 29 U.S.C. § 1103(a), since February 7, 2017. Accoring to his Linked-In page, WRIGHT has also been a member of the Board of Directors of WAWA from May 2016 to the present. From at least February 2017 to the present, Defendant WRIGHT has been a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his position as Trustee of the ESOP and because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

28.    Defendants WOOD, STOECKEL and WRIGHT are collectively referred to as the TRUSTEE DEFENDANTS. The Trustees are appointed by WAWA acting through its Board of Directors.

**Nominal Defendant**

29.    The WAWA, INC. EMPLOYEE STOCK OWNERSHIP PLAN (the "PLAN" or "ESOP") is an employee benefit plan as defined by ERISA § 3(3), 29 U.S.C. § 1002(3), is a defined contribution plan or individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. §1002(34), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). The ESOP is also an employee stock ownership plan ("ESOP") under ERISA § 407(d)(6) that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11. The ESOP is administered in part in WAWA,

Pennsylvania. The ESOP is named as a nominal defendant pursuant to Rule 19 to ensure that complete relief can be granted as to claims brought on behalf of the ESOP.

30.     The written instrument of the ESOP, within the meaning of ERISA § 402, 29 U.S.C. §1102, by which the Plan is maintained is the Wawa, Inc. Employee Stock Ownership Plan Amended and Restated as of a particular date (the "Plan Document"). The most recent Plan Document for the ESOP is the Wawa, Inc. Employee Stock Ownership Plan Amended and Restated Effective January 1, 2016 ("2016 Plan Document"). The 2016 Plan Document incorporated prior amendments, including Amendment No. 5, which was adopted on August 7, 2015. Prior to January 1, 2016, the written instrument of the Plan was the Wawa, Inc. Employee Stock Ownership Plan Amended and Restated Effective January 1, 2014 ("2014 Plan Document"). Prior to January 1, 2014, the written instrument of the Plan was the the Wawa, Inc. Employee Stock Ownership Plan Amended and Restated Effective January 1, 2010 ("2010 Plan Document").

## FACTUAL ALLEGATIONS

### The ESOP Plan Contributes to WAWA's Growth and Success.

31.     Defendant WAWA established the ESOP in 1992. Over the years, the ESOP has purchased additional shares of WAWA stock from other investors. The ESOP now owns approximately 41% of WAWA. Prior to the forced buyout of terminated and retired participants on September 11, 2015, the ESOP owned approximately 44.1% of WAWA. According to its most recent Independent Auditor's Report, dated October 13, 2017, the ESOP's stock holdings were valued at more than $1.7 billion.

32.     Most of the remaining shares of WAWA stock are owned by members of the Wood family, including Defendant WOOD. The Wood family, including Defendant WOOD,

currently owns approximately 50.2% of WAWA. Prior to the 2015 Amendment and the resulting

September 2015 forced buyout, the Wood family, including Defendant WOOD, owned

approximately 47.2% of WAWA. The Wood family became majority owners of WAWA as a

result of the September 2015 forced sale. As a result of the 2014 Amendment and 2015

Amendment, and the resulting continued liquidation of Class Members' shares, the Wood

family, including Defendant WOOD, has further increased its ownership percentage in WAWA.

33.     The ESOP is a leveraged ESOP because it has borrowed money to purchase

shares of WAWA stock from other shareholders. In December 2015, the Board of Directors of

WAWA approved a loan to the ESOP of $188,706,057 for the purpose of consolidating three

prior loans approved in 2012, 2013 and 2014. The ESOP is scheduled to repay the loan over 45

years.

**The ESOP Was Designed to Reward Employees for Their Contribution to WAWA's Growth and Success By Providing Them With the Right To Hold WAWA Stock Until Retirement.**

34.     At all times during Plaintiffs' employment with WAWA, their ESOP benefits

were an important part of their compensation package. Defendants WOOD and STOECKEL

explained in an August 10, 2015 letter that "WAWA's ESOP was designed to reward associates

for hard work and loyalty by sharing directly in the success of the Company. Today, WAWA's

ESOP is a highly valued Plan and a core part of our culture and total rewards program."

35.     Until the 2014 and 2015 Amendments, the Plan document for the ESOP provided

that Terminated Pre-2014 Employees and Retired Employee Participants had the same benefit

entitlements as participants who retired from WAWA on or after the Normal Retirement Date of

age 62. Both Terminated Pre-2014 Employee and Retired Employee Participants had the right to

select a distribution option, select a benefit commencement date and elect to receive their

benefits either in a single lump sum payment or in equal periodic installment payments over any period not to exceed ten (10) years.

36.     Defendants provided Summary Plan Descriptions (SPDs) and updated SPDs to Plaintiffs and other Class Members during the course of their employment. The SPD was the primary source of information about the ESOP for Plaintiffs and other participants.

37.     Until the SPD dated April 2016, the SPD stated that the vested benefits of employees who terminated their employment would be "paid in the same form and manner as retirement benefits" as described in the Section of the SPD titled "Retirement Benefits." Until the SPD dated April 2016, the SPD promised that retired employees with ESOP account balances greater than $5,000 could continue to hold WAWA stock in their ESOP accounts until age 68, at which time they could make a distribution election to receive payment of retirement benefits in equal installments up to ten (10) years or in a single lump sum, i.e. the same retirement benefit options available to ESOP participants who retired from WAWA at the normal retirement age of 62.

38.     Pursuant to Article VI of the ESOP Plan Document, Terminated Pre-2014 Employee and Retired Employee Participants had a put option which they could exercise at any time prior to age 68, and under the pre-2014 ESOP Plan Document, they were not required to exercise the put option until age 68. As a result of the put option, Terminated Pre-2014 Employee and Retired Employee Participants retirees were able to share in the continued success of WAWA.

39.     The purpose of the provision in Article VI of the ESOP Plan Document was a recognition of the contribution that former employees had made to the Company during their years of service and to provide them with retirement benefits, as explained by then-President and

CEO STOECKEL in the Quarterly Report Owners' Update dated September 26, 2010: "Our associates' compensation and *future financial security* is directly tied to company profitability." (Emphasis added.) As this provision gave Terminaed Pre-2014 Employee and Retired Employee Participants the choice of distribution options and whether to retain or divest themselves of WAWA stock following their retirement or termination of employment, the Retired Employee Participants had chosen to retain their WAWA stock in the ESOP.

40.     WAWA has acknowledged in communications with Plaintiffs and the Class that WAWA's recent success is built on many years of hard work by its employees. For example, in the Owners' Update Quarterly Report dated June 28, 2009, then-President & CEO STOECKEL stated: "These results [the Company's strong performance in Q2 2009] are built on the reservoir of trust we have established with our customers during the past 45 years...."

41.     In a WAWA Newsletter sent to all ESOP participants dated February 20, 2004 entitled "My ESOP, My Choice," which was issued at a time when WAWA was attempting to encourage WAWA employees to transfer their 401(k) Plan assets to the ESOP and which included a letter from "Dick Wood, Chairman & Chief Executive Officer," WAWA promised that "[i]f you are no longer employed by Wawa, and your ESOP account balance is MORE than $5,000, you can leave your account in the ESOP, you don't have to take a distribution until the year after you are 70 ½."

42.     Consistently thereafter, in communications to ESOP participants prior to 2014, including Plaintiffs and members of the Class, WAWA assured ESOP participants that they would remain owners after they terminated employment and be able to rely on their ESOP benefits for their retirement. For example, in the Quarterly Report Owners' Update dated September 26, 2010, which celebrated the ESOP and called the ESOP "one of our most treasured

employee benefits," WAWA chose to publish selected responses from certain employees about what the ESOP meant to them including the following: "I share in the company's growth through ownership interest in common stock of the company. *Also ESOP profits will provide an important supplement to my 401k for retirement*." (Emphasis added.) Another associate responded: "*Security for my retirement* and investing in a company that I respect and believe in." (Emphasis added.) Similarly, another associate stated: "I will have some money *when I retire* to pay any living expenses." (Emphasis added.) Another associate stated: "I am an owner!" and the quarterly report featured photos of associates holding signs saying: "I'M A PROUD OWNER."

43.    Through April 2016, the SPD for the ESOP promised that "no amendment to the Plan *will reduce the benefit you have already earned, or divest you of any entitlement to a benefit.*" (Emphasis added).

44.    Remaining a closely-held corporation has been central to WAWA's corporate culture. In his Report to Owners at the WAWA Annual Meeting on May 2, 2013, Chris Gheysens, President and CEO of WAWA, listed "[t]hree deeply held beliefs" that "act as [WAWA's] moral compass" – "private ownership, shared ownership and servant leadership."

45.    In 2004, WAWA was forced to buy out a large minority shareholder, Claneil Enterprises, Inc. ("Claneil"), in order to avoid a public stock offering. WAWA had to turn to its employees to come up with the necessary funds to buy out Claneil. WAWA offered eligible participants in the WAWA Savings and Profit Sharing Plan (ESPSP), including Plaintiffs Cunningham, Rucki, and DiDonato, the opportunity to transfer all or part of their ESPSP account balances to the ESOP, and use this money to purchase additional shares of WAWA stock for their ESOP accounts. Plaintiffs Cunningham and DiDonato and other participants transferred all or a portion of their ESPSP account balances to the ESOP, and used this money to purchase

additional shares of WAWA stock. All told, WAWA employees transferred approximately $60 million from their ESPSP accounts to the ESOP to fund the Claneil buyout.

46.     WAWA provided Plaintiffs Cunningham, Rucki, and DiDonato, and other eligible participants in the ESPSP an Employee Offering Memorandum dated February 5, 2004 ("Offering Memorandum"). The Offering Memorandum directed these Plaintiffs and other eligible participants to review the SPD to learn the terms and conditions of the ESOP. WAWA attached a copy of the SPD to the Offering Memorandum. Like other SPDs provided to Plaintiffs, the SPD attached to the Offering Memorandum represented and promised that "no amendment to the Plan will reduce the benefit you have already earned, *or divest you of any entitlement to a benefit*." (Emphasis added).

47.     Since it was a closely-held company, WAWA had considered converting from a C-Corporation to an S-Corporation on several occasions over the years. In 2013, WAWA revisited this issue. WAWA's Board of Directors appointed a Special Committee to evaluate whether WAWA should convert to an S-Corporation.

48.     In the "Owners' Update Quarterly Report" dated September 28, 2014, WAWA President and CEO Chris Gheysens stated "as you read this letter, WAWA has begun the process of converting from a C-Corporation to an S-Corporation, an effort that your management team believes has the potential to be one of the largest value-creating events in WAWA's history. The benefits of the conversion are immediate, significant and long-term, *translating into approximately $1 billion in incremental value to all stakeholders over the next ten years*. Through the benefits provided by being an S-Corporation, we will be able to strengthen our ESOP, maintain our aggressive expansion plans and bring more innovations to market." (Emphasis added.)

49.     In his Letter to Owners in WAWA's Owners' Update Year End Report dated December 28, 2014, President Gheysens stated: "By converting to an S-Corporation, we have created tremendous value for both your Company and its many stakeholders." These stakeholders included Plaintiffs and other Class members.

50.     WAWA converted from a C-Corporation to an S-Corporation following a merger transaction in December 2014. As a result of this conversion, WAWA no longer had to pay federal corporate income tax as of 2015.

51.     As part of the merger transaction, WAWA shareholders who held shares outside the ESOP and who owned at least 250 shares of WAWA stock had the choice of receiving either (1) shares in the new WAWA entity, or (2) $7,000 in cash for each share of WAWA stock. WAWA shareholders holding shares outside the ESOP with fewer than 250 shares of WAWA stock received $7,000 in cash for each share of WAWA stock. Since non-ESOP shareholders with fewer than 250 shares did not have the right to receive stock in the new WAWA entity, WAWA was able to reduce the number of shareholders to under 100, as required for an S-Corporation. Since the ESOP Trustees hold legal title to the WAWA stock allocated to ESOP participants, the ESOP counts as a single shareholder for purposes of the S-Corporation.

52.     As part of the merger transaction, WAWA shareholders, including ESOP participants, were permitted to exercise dissenters' rights and receive $7,000 in cash for each share of WAWA stock. At least one ESOP participant exercised dissenters' rights. In or about December 2014, the ESOP transferred $624,211 to the Wawa, Inc. 401(k) Plan as a distribution to those ESOP participants who exercised dissenters' rights.

53.     WAWA shareholders, including ESOP participants, were entitled to vote on the proposed merger and S-Corporation conversion in November 2014. Defendants WOOD,

STOECKEL, and COMMITTEE determined that they had a conflict of interest for purposes of the proposed merger and conversion, and therefore WAWA retained an independent fiduciary, Argent Trust Company, to act on behalf of the ESOP. As an independent fiduciary, Argent Trust Company voted on behalf of the unallocated WAWA shares held by the ESOP and the WAWA shares held by ESOP participants who failed to provide voting instructions.

54.     Following the S-Corporation conversion in December 2014, WAWA began making quarterly tax distributions to shareholders, including ESOP participants. Since the ESOP is a tax-qualified Plan, the ESOP shareholders did not have to make tax payments with these distributions. In addition, Defendants started obtaining quarterly valuations of the ESOP's WAWA stock beginning in 2015. Previously, the TRUSTEE DEFENDANTS and COMMITTEE DEFENDANTS only had obtained an annual valuation of the ESOP's WAWA stock.

**WAWA Forces All Terminated and Retired Employees to Sell their Shares.**

55.     In anticipation of the S-Corporation conversion, effective January 1, 2014, WAWA amended and restated the ESOP in the 2014 Plan Document. One of the changes in the 2014 Plan Document was that for the first in its history, WAWA expressed its intent to change distribution options under the PLAN to preclude former employees from continuing to hold WAWA stock. Specifically, the 2014 Plan Document provided that "effective January 1, 2015, the Company desires to divest terminated participants of shares of ESOP stock."

56.     Section 5.2(d) of the 2014 Plan Document provided that "effective January 1, 2015, the Trustee shall liquidate the ESOP Stock held in the ESOP Stock Account of any Participant who terminates employment with the Company and all Affiliated Companies on or after January 1, 2015." Section 5.2(d) of the 2014 Plan Document also provided that "[s]uch

liquidation shall take place during the later of the 2015 Plan Year or the Plan Year following the Plan Year in which the Participant terminated employment with the Company and all Affiliated Companies."

57.     Section 5.2(d) of the 2014 Plan Document also provided: "All liquidated proceeds from the ESOP Stock Account of any such participant, along with amounts held in the Participant's ESOP Cash Account, shall be transferred to the Participant's account in the 401(k) Plan" and "[i]f the Participant does not have an account in the 401(k) Plan at the time of the transfer, the Trustee" was required to direct "the plan administrator of the 401(k) Plan to establish an account on behalf of the Participant."

58.     The COMMITTEE DEFENDANTS did not provide notice to the ESOP participants of the new provisions in Section 5.2(d) of the 2014 Plan prior to February 10, 2014. Neither WAWA nor any fiduciary of the Plan actually applied or implemented Section 5.2(d) of the 2014 Plan as it existed prior to February 10, 2014.

59.     On February 10, 2014, WAWA again amended Section 5.2(d) of the 2014 Plan Document to provide in relevant part that "[i]f the Participant terminates employment with the Company and all Affiliated Companies after he has attained age 50 and has been credited with 25 Years of Credited Service, or after he has attained age 62 and has been credited with 15 Years of Credited Service, the liquidation shall occur during the fifth Plan Year following the Plan Year in which the Participant terminates employment with the Company and all Affiliated Companies unless the Participant terminates employment for Cause."

60.     Section 5.2(d) of the 2014 Amendment provided: "All liquidated proceeds from the ESOP Stock Account of any such participant, along with amounts held in the Participant's ESOP Cash Account, shall be transferred to the Participant's account in the 401(k) Plan" and

"[i]f the Participant does not have an account in the 401(k) Plan at the time of the transfer, the Trustee" was required to direct "the plan administrator of the 401(k) Plan to establish an account on behalf of the Participant."

61.    The 2014 Amendment was limited to and Section 5.2(d) of the Plan only applied to "any Participant who terminates employment with the Company and all Affiliated Companies *on or after January 1, 2015*." (Emphasis added). The 2014 Amendment did *not* apply to any persons who terminated *before* January 1, 2015.

62.    The COMMITTEE DEFENDANTS did not provide notice to the ESOP participants of the new provisions in Section 5.2(d) of the 2014 Amendment prior to at least mid-August 2014 and possibly as late as sometime in 2015. Neither WAWA nor any fiduciary of the ESOP actually applied or implemented Section 5.2(d) of the 2014 Amendment before March 2016.

63.    On August 7, 2015, WAWA again amended Section 5.2 of the 2014 Plan Document ("2015 Amendment"). For the first time, the 2015 Amendment provided that participants who had either retired from WAWA or had terminated employment with WAWA *prior to* January 1, 2015 would also have their ESOP accounts liquidated.

64.    The August 2015 Amendment added Section 5.2(e) to provide that "effective August 30, 2015, the Trustee shall liquidate the ESOP stock held in the ESOP Account of any Participant who terminated employment with the Company and all Affiliated Companies prior to January 1, 2015… as follows:"

(1)    If a Participant terminated employment with the Company and all Affiliated Companies (A) prior to January 1, 2011 due to Retirement or (B) prior to January 1, 2015 due to Separation of Employement, the liquation shall occur on August 30, 2015;

(2)    In all other cases, the liquidation shall occur during the fifth Plan Year in

which the Participant terminated employment with the Company and all Affiliated Companies.

65. For purposes of Section 5.2 only, Retirement was defined to mean a Participant who terminates employment with the Company and all Affiliated Companies after he has attained age 50 and has been credited with 25 Years of Credited Service, or after he has attained age 62 and has been credited with 15 Years of Credited Service.

66. As a result of the August 2015 Amendment, Participants who had retired on or after January 1, 2011, but before January 1, 2015, would have the WAWA stock in their ESOP accounts liquidated "during the fifth Plan Year following the Plan Year in which the Participant terminated employment with the Company and all Affiliated Companies." Under the terms of Section 5.2 of the August 2015 Amendment, the earliest date on which this could occur was March 2016.

67. As a result of the 2015 Amendment, the Plan Document provided, in Sections 5.2(d) and (e), that following groups of Participants would have the WAWA stock in their ESOP accounts liquidated "during the fifth Plan Year following the Plan Year in which the Participant terminates employment with the Company and all Affiliated Companies:" (1) Participants who had retired on or after January 1, 2011, but before January 1, 2015, unless the Participant had "terminate[d] employment for cause" and (2) Participants who had retired on or after January 1, 2015 unless the Participant had "terminate[d] employment for cause."

68. After the 2015 Amendment, Section 5.2(d) of the Plan Document provided that any Participant who terminated employment on or after January 1, 2015 for any reason but Retirement would have the WAWA stock in their ESOP accounts liquidated during the Plan Year following the Plan Year.

69. For Participants who had retired on or after January 1, 2011, but before January 1,

22

2015 (and not for cause) and the Participants who terminated employment on or after January 1, 2015 for any reason but Retirement as defined in the August 2015 Amendment, the earliest liquidation for such Participants began in March 2016. For the Participants who had retired on or after January 1, 2015 and had not been "terminate[d] employment for cause", the earliest date of liquidaition for such Participants would be 2021. Previously all three groups were entitled to hold their shares until they reached the age of 68, when they were required to take distributions from the ESOP.

70.     The 2015 Amendment was announced to ESOP Participants by letter dated August 10, 2015. In that letter, Defendants WOOD and STOECKEL informed Plaintiffs and other Terminated and Retired Employee Participants of changes to the ESOP that would curtail their ability to hold WAWA stock in their ESOP accounts ("August 10 letter").

71.     The August 10 letter stated that WAWA's Board of Directors adopted an amendment to the ESOP on August 7, 2015 ("2015 Amendment"). According to the August 10 letter, the 2015 Amendment required the sale of the WAWA stock held in the ESOP accounts of participants who ceased employment with WAWA before January 1, 2015 as early as August 30, 2015.

72.     Plaintiffs and other Class Members also received a separate letter dated August 10, 2015 from the ESOP as an enclosure with the letter from Defendants WOOD and STOECKEL.

73.     The August 10 letter stated that the 2015 Amendment brought the WAWA ESOP in line with most other ESOPs and asserted that only 13% of ESOP companies allow former employees to stay in the ESOP for longer than one year. Contrary to this statement, the overwhelming majority of leveraged ESOPs require former employees who terminate

23

employment for reasons other than retirement, death or disability to continue to hold employer stock in the ESOP until the acquisition loan has been repaid. The ESOP is a leveraged ESOP with an outstanding acquisition loan of over $200 million as of December 31, 2014.

74.     The August 10 letter also stated that the 2015 Amendment was necessary to make WAWA stock available for future ESOP contributions – "If we do not make these changes, there may not be enough shares of WAWA stock available to contribute to associate accounts each year.... If shares are not available [to contribute to the ESOP], current associates would receive a cash contribution, but would not have the ability to participate in the future growth of the Company's stock because there may not be enough stock in the Plan to be allocated to them...." Inconsistent with the stated reasons for the Amendment, WAWA retired the stock purchased from participants in September 2015 and the September 2015 forced sale did not make any additional WAWA stock available for active employee participants in the ESOP. Upon information and belief, the shares from the forced liquidation of the ESOP accounts of Plaintiffs and the Class were likewise retired.

75.     At the time of the 2014 Amendment and the 2015 Amendment, the WAWA ESOP held 50,871.74 unallocated shares of WAWA stock. In other words, the ESOP held far more unallocated shares of WAWA stock than the shares that were owned by Terminated and Retired Employee Participants. Upon information and belief, Defendants intended to use the ESOP's unallocated shares of WAWA stock for contributions to active employee participants in the ESOP.

76.     The true purpose of the forced sale was to allow the Wood family to regain a controlling interest in WAWA. By retiring the WAWA stock purchased from Plaintiffs and the Class, Wood family has been restored to majority ownership of WAWA.

**WAWA Begins to Liquidate Shares.**

77.    According to the 2014 Form 5500 filed by WAWA with the Department of Labor, the liquidation of the Participants who were members of the *Pfeifer* class occured on September 11, 2015 when $180,816,225 of ESOP stock in terminated participants accounts was liquidated. On that date, WAWA purchased approximately 26,497 shares of WAWA stock in the ESOP accounts. According to the WAWA 2014 Form 5500, of the ESOP stock in the accounts of the *Pfeifer* Class members that was liquidated and converted into $180,816,225, $91,069,675 of the proceeds were transferred to the 401(k) accounts for these retired and terminated participants. The remaining $92,800,000 in proceeds from the forced sale of WAWA stock belonging to *Pfeifer* Class members was distributed either as lump sum distributions or rollovers to IRAs or other non-WAWA affiliated qualified plans.

78.    According to the Notes to the Financial Statements filed with the 2016 Form 5500, the WAWA ESOP transferred $18,635,436 to the Wawa 401(k) Plan in 2016.

79.    According to Note 10 of the 2016 Form 5500, the WAWA Board of Directors approved an advance of cash of $56 million from WAWA to the ESOP to fund the annual repurchase oligation, which was used to purchase the liquidated shares in 2017 and WAWA in fact purchased $49,996,183 worth of shares of WAWA stock from the ESOP in 2017.

80.    As part of the forced sale of their WAWA stock from the WAWA ESOP, Plaintiffs and the Class were charged a $50.00 "distribution charge" by making a deduction directly from their individual ESOP accounts for the distribution of their accrued benefits, even though Plaintiff and the Class had no choice but to have their benefits distributed.

**Defendants Consistently Undervalued the Shares of Terminated and Retired Employees.**

81.    From at least 2010 through the present, business developments had made WAWA

stock an excellent investment. These developments included WAWA's conversion to an S-Corporation effective 2015, which eliminated the Company's federal income tax obligations, and WAWA's successful expansion into new regions, including Florida.

82.     When liquidating ESOP participants' shares, pursuant to Section 5.3 of the 2014 ESOP Plan Document, the Trustee was required to engage "an independent appraiser to establish the fair market value of ESOP Stock as of each Valuation Date" by an appraiser with experience valuing securities that are not actively traded and the appraiser was required to provide the Trustee *and* the Committee with a written determination of the value of the ESOP stock within 30 days after the Valuation Date. Even though the Trustee was required to hire a third-party valuation firm to appraise the value of the ESOP's WAWA stock, the ultimate duty and responsibility to value the stock was and is the responsibility of the Plan's fiduciaries.

83.     Pursuant to Article I of the 2014 ESOP Plan Document, "Valuation Date" is defined as "the last day of each fiscal year of the Company and each interim date on which the Committee determines that a valuation of the Fund shall be made." Beginning in 2015, the Committee has determined that the interim valuation date will be each quarter and as a result, the Committee has obtained an updated value of WAWA stock from a valuation firm at least at the end of each quarter.

84.     Pursuant to Section 6.8 of the 2014 ESOP Plan Document, "the value of the Fund and the amount of the Participant's interest shall be determined in accordance with the provisions of Article V as of the Valuation Date immediately preceding the date of any payment under this Article."

85.     An outside financial advisor, Columbia Financial Advisors, Inc. ("Columbia"), has performed quarterly appraisals of the WAWA shares in the Plan at all relevant times. The

appraisals prepared by Columbia generally reflect rising values for WAWA stock.

86.     As of December 31, 2010, WAWA stock was valued at $2,766.00 per share. As of December 31, 2011, WAWA stock was valued at $3,130.00 per share. As of December 31, 2012, WAWA stock was valued at $3,819.00 per share. As of December 31, 2013, WAWA stock was valued at $4,544.00 per share. As of December 31, 2014, WAWA stock was valued at $6,337.00 per share. As of March 29, 2015, WAWA stock was valued at $6,491.00 per share. As of June 30, 2015, WAWA stock was valued at $6,940.00 per share.

87.     The value of WAWA stock has continued to increase since Defendants began divesting Terminated Pre-2014 and Retired Employees of their shares. As of September 30, 2015, the value of WAWA stock, as appraised by Columbia, was $7,381.00 per share. As of December 31, 2015, the appraised value of WAWA stock was $7,652.00 per share. Between December 31, 2015 and December 30, 2017 value of WAWA stock increased every quarter, except one, increasing from $7,652.00 in December 30, 2017 to $9,926.00 by December 31, 2017 as illustrated by the following table:



**Wawa, Inc. Stock Prices**

88.     While the chart above depicts a steady upward trajectory in share prices, the methodology consistently employed by Columbia and adopted by the TRUSTEE DEFENDANTS undervalues the WAWA shares of Retired and Terminated Pre-2014 Employee Participants who have been forced to sell their stock.

89.     As explained in the Form 5500s, the valuations for the ESOP rely upon a blend of two approaches. First, the valuations rely upon the "market approach," also known as the comparable public company approach. Under the market approach, the appraiser selects comparable publicly-traded companies and uses data from those guideline companies to determine the fair marke value of WAWA.

90.     Second, the valuations for the ESOP also rely upon an "income approach," also

known as a discounted cash flow analysis. Under the income approach, the appraiser calculates a net present "discounted" value of forecasted cash flows and combines it with a so-called "terminal value," which represents the value of the company at the end of a projection period.

91.     As reported in the 2016 Form 5500, "[t]here have been no changes in the methodologies used" for the valuations in 2015 and 2016.

92.     The Columbia valuations, however, undervalue WAWA in several respects. Columbia failed to account for the fact that WAWA has used a fair market value greater than Columbia's appraised values used in WAWA's forced buyouts of Terminated Pre-2014 and Retired Employees.

93.     WAWA obtained valuations in conjunction with the S-Corporation conversion in late 2014. These valuations appraised WAWA stock at prices far higher than the contemporaneous ESOP valuation, which employed the same methodology Columbia continues to utilize.

94.     Significantly, the valuations in conjunction with the S-Corporation conversion did not include any consideration of the benefits to WAWA resulting from the proposed S-Corporation conversion, such as the elimination of corporate tax liabilities. Because WAWA converted to an S-Corporation in December 2014, these benefits should have been considered in valuing WAWA stock beginning in 2015.

**The WAWA ESOP Appraisals are Based on Erroneous Methodology.**

95.     There are additional errors, repeated consistently in the Columbia valuations, adopted by the TRUSTEE DEFENDANTS, all of which have the net effect of reducing per-share valuations.

96.     Columbia's valuations employ an improper discount for lack of marketability

because there is no public market for WAWA stock. Although ESOP participants can only liquidate their stock by exercising a "put option" to sell the stock back to WAWA or the ESOP, WAWA and the ESOP have a long history of purchasing stock from ESOP participants and other shareholders. Moreover, WAWA is a healthy company with the ability to meet its future ESOP redemption obligations.

97.     An S-Corporation conversion improves a company's cash flows, leaving less doubt about its ability to redeem ESOP shares, relative to its pre-conversion ability. Indeed, principals of Columbia have published articles suggesting that appraisers should reduce a company's discount for lack of marketability following an S-Corporation conversion for this reason.

98.     Even after the S-Corporation conversion, Columbia continued to employ a significant marketability discount in valuing WAWA's shares.

99.     Valuations of WAWA stock after the S-Corporation conversion should have reflected little or no discount for marketability. Correspondingly, Class Members would have received a higher share price had Columbia reduced or eliminated the discount for lack of marketability for purposes of valuing WAWA after the S-Corporation conversion.

100.    The Columbia valuations also employ incorrect assumptions about the timing of WAWA's future cash flows. Contrary to Columbia's assumptions, WAWA's cash flows are spread out over the entire year. Columbia's incorrect assumptions regarding the timing of WAWA's future cash flows has lowered the valuations of WAWA stock received by Class Members.

101.    Columbia's valuations have also ignored the possibility that WAWA may be sold or have an IPO at some future date. Indeed, the 1922 George Wood Trust is WAWA's largest

shareholder other than the ESOP (approximately 39.6%). The 1922 George Wood Trust will terminate in 2030, which will likely put pressure on WAWA to consider a possible sale or IPO. In addition, Columbia's valuations have not given sufficient weigth to the comparable public company "market" approach which compares WAWA to publicly traded companies.

102.    Class Members would have received a higher share price had the Trustees not adopted the errors in the Columbia valuations.

### The TRUSTEE Defendants Knew of Facts That Should Have Alerted Them About Errors in the Valuation Methodology

103.    The fact that the June 28, 2015 valuation of $6,940.00 per share was lower than the $7,000.00 per share price used for the 2014 merger, and the valuations WAWA obtained for the S-Corporation Conversion, should have raised a red flag to any loyal and prudent fiduciary that the June 28, 2015 valuation did not properly reflect the fair market value of WAWA stock as of June 28, 2015.

104.    As the June 28, 2015 valuation employed essentially the same valuation methodology that Columbia has utilized ever since, the TRUSTEE DEFENDANTS have been on notice that the Columbia valuations did not represent the fair market value of WAWA stock. Any loyal and prudent fiduciary should have questioned the repeated use of a valuation methodology that had yielded results lower than the contemporaneous valuations used for the S-Corporation Conversion.

105.    Defendants WOOD and STOECKEL operated under a conflict of interest in valuing the WAWA stock held by Plaintiffs and other Class members because, upon information and belief, both had significant investments in WAWA stock both inside and outside of the ESOP. WAWA has retired some or all of the shares repurchased as a result of the 2014 Amendment and 2015 Amendment, and the reduced number of outstanding shares has increased

the share price for WAWA shareholders, including Defendants WOOD and STOECKEL.

Additionally, Defendant WOOD faced a further conflict of interest because as a result of the

forced liquidations, his family block of shares increased the amount of their controlling interest

in WAWA. Notwithstanding these conflicts of interest, Defendants did not retain an independent

fiduciary or obtain additional valuations even though such precautions had been taken in

connection with the 2014 merger and S-Corporation conversion.

**Effect of the Breaches on Plaintiffs and the Class**

106.    In connection with the liquidation of their ESOP accounts, Plaintiffs and the Class

received less than fair market value for their WAWA stock. As a result of the forced liquidation

of their WAWA stock, Plaintiffs and Class Members lost the right to continue to hold WAWA

stock, the dividends and tax distributions paid, and the opportunity for future investment gains,

dividends and tax distributions.

107.    As a result of the 2014 Amendment and the 2015 Amendment, Plaintiffs and the

Retired Employee Participants and the Terminated Pre-2014 Employee Participants were

divested of the right to continue to hold WAWA stock in their ESOP accounts.

108.    As a result of the 2014 Amendment and the 2015 Amendment, Plaintiffs and the

Retired Employee Participants and the Terminated Pre-2014 Employee Participants were

divested of an optional form of distribution under the ESOP.

## CLASS ACTION ALLEGATIONS

109.    Plaintiffs bring Counts I-IV, IX and X as a class action pursuant to Fed. R. Civ. P.

23(a) and (b), on behalf of the following Class:

> All Participants in the Wawa, Inc. Employee Stock Ownership Plan ("Wawa
> ESOP") with account balances greater than $5,000.00 as of the date that they
> terminated employment whose accounts were liquidated on or after September
> 12, 2015 and the beneficiaries of such participants.

110.   Plaintiffs Cunningham and DiDonato bring Counts V, VI, VII and VIII as a class action pursuant to to Fed. R. Civ. P. 23(a) and (b), on behalf of the following Subclass (the "Retired Employee Subclass"):

All Participant members of the Class who Retired[1] between January 1, 2011 and December 31, 2014 and the beneficiaries of such Participants.

111.   Plaintiffs Ciuffetelli and Rucki bring Counts VI and VIII as a class action pursuant to to Fed. R. Civ. P. 23(a) and (b), on behalf of the following Subclass (the "Terminated Pre-2014 Employee Subclass"):

All Participant members of the Class who were employed by Wawa and participated in the ESOP before January 1, 2014 and who terminated employment on or after January 1, 2015 and the beneficiaries of such participants.

112.   Excluded from the Class and the Subclasses are the following persons: (a) Defendant Trustees and members of the Defendant Committee and their immediate families; the current officers and directors of Defendant Wawa and their immediate families; (b) participants who were members of the Class in *Pfeifer, et. al., v. Wawa, Inc., et al.*, No 2:16-cv-00497-PD (E.D. Pa); and (c) the legal representatives, successors, heirs, and assigns of any such excluded persons.

**Impracticabiliy of Joinder**

113.   The Class is so numerous that joinder of all members is impracticable. According to the 2016 Form 5500 filed with the Department of Labor on October 16, 2017 (which is the most recent Form 5500), there were 173 retired or separated participants receiving benefits, and

---

[1] "Retired" means a Participant who terminated employment with Wawa after he has attained age 50 and has been credited with 25 Years of Credited Service, or after he has attained age 62 and has been credited with 15 Years of Credited Service and was not terminated for Cause (as defined in Section 5.2(g) of the Plan (i.e. in the 2015 Amendment).

1,976 retired or separated participants entitled to future benefits, plus another 10 deceased participants whose beneficiaries are receiving or entitled to receive future benefits. Based on this information, Plaintiffs estimate that that the Class has several thousand members, the Retired Employee Subclass has hundreds of members, and the Terminated Pre-2014 Employee Subclass has hundreds if not thousands of members.

114.    WAWA operates stores in at least six states – Pennsylvania, New Jersey, Delaware, Maryland, Virginia and Florida – and the District of Columbia, and therefore has employees in at least those seven jurisdictions. Based on the locations of WAWA and its employees, the members of this Class are geographically dispersed.

**Commonality**

115.    The issues of liability are common to all members of the Class and the Subclasses and are capable of common answers as those issues primarily focus on Defendants' acts (or failure to act). The common issues include whether Defendants breached various fiduciary duties to the ESOP, whether Defendants WAWA, WOOD and STOECKEL engaged in prohibited transactions, whether Defendants are liable for their co-fiduciaries breaches, whether the ESOP suffered losses as a result of the fiduciary breaches and other violations and what is the appropriate relief for Defendants' violations of ERISA.

116.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    a.    Whether TRUSTEE DEFENDANTS and the COMMITTEE
    DEFENDANTS breached their fiduciary duty to the Class by causing the ESOP
    and its particpants not to receive adequate consideration for the WAWA stock in
    their ESOP accounts;

34

b.      Whether the TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS breached their fiduciary duty to the Class by using valuations of WAWA stock that did not reflect fair market value for the price paid for the WAWA stock in the ESOP accounts of the Class;

c.      Whether the TRUSTEE DEFENDANTS caused the ESOP to engage in prohibited transactions in connection with the liquidation of the WAWA stock in the ESOP accounts of the Class and whether WAWA knowingly participated in those transactions;

d.      Whether Defendants WOOD and STOECKEL engaged in prohibited transactions in violation of ERISA § 406 in connection with implementation of the 2014 and 2015 Amendments and the liquidation of the WAWA shares in the ESOP accounts of the Class;

e.      Whether the TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS breached their fiduciary duty to the Class in connection with the transfer of shares from the WAWA ESOP to the WAWA 401(k) Plan;

f.      Whether WAWA breached its fiduciary duties to appropriately monitor the TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS;

g.      The losses suffered by the ESOP and Terminated Pre-2014 and Retired Employee Participants as a result of Defendants' ERISA violations; and

h.      The appropriate relief for Defendants' violations of ERISA.

117.    Questions of law and fact common to the Retired Employee Subclass include, but are not limited to, the following:

a.      Whether the 2015 Amendment is valid and enforceable as to the members

35

of the Retired Employee Subclass;

b.     Whether Defendant WAWA violated ERISA's anti-cutback provision, ERISA §204(g), by eliminating the benefit entitlements and distribution options of Retired Employee Participants in the 2015 Amendment;

c.     Whether the COMMITTEE DEFENDANTS and TRUSTEE DEFENDANTS breached their fiduciary duties by representing that Participants would have the right to hold WAWA shares until the age of 68;

d.     Whether the COMMITTEE DEFENDANTS and TRUSTEE DEFENDANTS breached a fiduciary duty to the Retired Employee Subclass by representing that WAWA would not divest Plan participants of any entitlement to a benefit under the ESOP;

e.     Whether the COMMITTEE DEFENDANTS violated ERISA § 102 based on disclosures in the SPD that Participants would have the right to hold WAWA shares until the age of 68;

f.     Whether the COMMITTEE DEFENDANTS violated ERISA § 102 based on disclosures in the SPD that WAWA would not divest Plan participants of any entitlement to a benefit under the ESOP; and

g.     The appropriate relief for Defendants' violations of ERISA.

118.    Questions of law and fact common to the Terminated Pre-2014 Employee Subclass include, but are not limited to, the following:

a.     Whether Defendants violated ERISA's anti-cutback provision, ERISA §204(g), by eliminating the benefit entitlements and distribution options of

Terminated Pre-2014 Employee Participants in the 2014 Amendment;

b. Whether the COMMITTEE Defendants violated ERISA § 102 in its disclosures in the SPD that Participants would have the right to hold WAWA shares until the age of 68;

c. Whether the COMMITTEE Defendants violated ERISA § 102 in its disclosures in the SPD that WAWA would not divest Plan participants of any entitlement to a benefit under the ESOP; and

d. The appropriate relief for Defendants' violations of ERISA.

**Typicality**

119.   Plaintiffs' claims are typical of those of the Class and the Subclasses because their claims arise from the same events, practices and/or course of conduct.

120.   With respect to the Class, Plaintiffs challenge Defendants' valuation of WAWA stock in connection with the liquidation of their WAWA stock utilizing similar methodology, whether the TRUSTEE DEFENDANTS and COMMITTEE DEFENDANTS breached their fiduciary duties in connection with the forced sale of WAWA stock in the ESOP and the liquidation and transfer of ESOP accounts of the Class.

121.   With respect to the Retired Employee Subclass, Plaintiffs Cunningham and DiDonato challenge Defendants' ability to amend the terms of the ESOP after their termination from employment and divest them of entitlement to a benefit and a distribution option under the ESOP, namely, their option to hold WAWA shares in their ESOP accounts until the age of 68, Defendants' ability to amend the terms of the Plan under ERISA, and Defendants' disclosures of the rights and benefits in uniform communications provided to all participants.

122.   With respect to the Terminated Pre-2014 Employee Subclass, Plaintiffs Ciuffetelli

and Rucki challenge Defendants ability to amend the terms of the Plan under ERISA and Defendants' disclosures of the rights and benefits in uniform communications provided to all participants.

123.    Plaintiffs' claims are also typical of the claims of the other members of the Class and Subclasses because the relief primarily sought consists of (a) a declaration establishing their rights under the Plan in effect at the time of their termination and/or consistent with the SPDs provided to them during their employment, (b) requiring the fiduciaries to make the Plan whole any losses caused by their fiduciary breaches and to disgorge their profits to the Plan, and (c) any such recovery from the Plan fiduciaries will be paid to the Plan and any equitable relief will flow to all Class Members.

**Adequacy**

124.    Plaintiffs will fairly and adequately represent and protect the interests of the Class and the Subclasses.

125.    Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the members of the Class.

126.    Plaintiffs Cunningham and DiDonato do not have any interests antagonistic to or in conflict with the interests of the members of the Retired Employee Subclass.

127.    Plaintiffs Ciuffetelli and Rucki do not have any interests antagonistic to or in conflict with the interests of the members of the Terminated Pre-2014 Employee Subclass.

128.    Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

**Rule 23(b)(1)**

129.    Class certification of Plaintiffs' Claims for Relief for violations of ERISA is

38

appropriate pursuant to Fed. R. Civ. P. 23(b)(1). Fiduciaries of ERISA-covered plans have a

legal obligation to act consistently with respect to all similarly situated participants and to act in

the best interests of the Plan and their participants. This action challenges whether Defendants

acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a

whole. As a result, prosecution of separate actions by individual members would create the risk

of inconsistent or varying adjudications that would establish incompatible standards of conduct

relating to the Plan.

130.    The requirements of Fed. R. Civ. P. 23(b)(1)(B) are also satisfied. Administration

of an ERISA-covered plan requires that all similarly situated participants be treated the same.

Resolving whether Defendants fulfilled their fiduciary obligations to the Plans, engaged in

prohibited transactions with respect to the Plan or knowingly participated in such breaches or

violations as to Plaintiffs' claims would, as a practical matter, be dispositive of the interests of

the other participants in the ESOP even if they are not parties to this litigation and would

substantially impair or impede their ability to protect their interests if they are not made parties to

this litigation by being included in the Class.

**Rule 23(b)(2)**

131.    Class certification of Plaintiffs' Claims for Relief for violations of ERISA is also

appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act

on grounds generally applicable to the Class, making appropriate declaratory and injunctive

relief with respect to Plaintiffs and the Class as a whole. This action challenges whether

Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the

ESOP as a whole. The relief sought in this case primarily consists of declarations that

Defendants breached their fiduciary duties or engaged in other violations of ERISA. As ERISA

is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**Rule 23(b)(3)**

132.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. The common questions of law and fact concern whether Defendants breached their fiduciary duties to the ESOP or its participants, engaged in prohibited transaction illegal under ERISA, and/or enacted or implemented improper amendments to the ESOP. As the members of the Class were participants in that Plan, their accounts were affected by those breaches and violations. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. The 2014 and 2015 Amendments divested Plaintiffs and the Subclass members of their WAWA stock, and/or their opportunities to hold stock until the age of 68, and thereby breached the promise that the Defendants would not divest Plaintiffs and the Subclass Members "*of any entitlement to a benefit.*" In addition, Plaintiffs and all Class members received less than fair market value for their WAWA stock by utilizing the same valuation methodology. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

133.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims generally are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings, and each of those individual proceedings could seek recovery for the entire Plan. Additionally, the amounts of recovery for most of the individual Class members is

small compared to the expense and burden of individual prosecution of this action. Finally, a class action is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

134.    The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a)    The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b)    No other litigation concerning this controversy has been filed by any other members of the Class. The related matter *Pfeifer, et. al., v. Wawa, Inc., et al., No 2:16-cv-00497-PD,* pending before this Court involved similar claims on behalf of a different class.

c)    This District is most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) the headquarters of WAWA is located in this District, (ii) the ESOP is administered in this District, (iii) most if not all of the Defendants can be found in this District, (iv) the majority of the WAWA company witnesses are expected to be located in this District and (v) a significant number of the Class Members live in or nearby this District.

d)    There are no anticipated difficulties in managing this case as a class action.

135.    The names and addresses of the Class are available from the ESOP. Notice will be provided to all members of the Class to the extent required by Rule 23.

## COUNT I
### Breach of Fiduciary Duty Under ERISA § 404(a)(1)(A), (B) & (D),
### 29 U.S.C. §§ 1104(a)(1)(A), (B) & (D) Against the Committee Defendants and the Trustee
### Defendants Regarding the Sale of WAWA Stock in the Forced Sales
### On Behalf of the Class

136.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

137.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a fiduciary discharge his

or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A)

for the exclusive purpose of providing benefits to participants and the beneficiaries of the ESOP,

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a

prudent person acting in a like capacity and familiar with such matters would use in the conduct

of an enterprise of a like character and with like aims, and (D) in accordance with the documents

and instruments governing the plan insofar as such documents and instruments are consistent

with ERISA.

138.    The duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA §

404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the

participant receives adequate consideration for the assets in his or her account in the Plan.

Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally

recognized market, means the fair market value of the asset determined in good faith by the

trustee or named fiduciary pursuant to the terms of the plan and in accordance with the

Department of Labor regulations.

139.    Section 5.3 of the terms of the Plan require that all valuations must be supported

by independent appraiser selected by the Committee who provides the Trustee and the

Committee with a written determination of the value of the ESOP stock within 30 days after the

Valuation Date, and that all valuations of ESOP stock must be made in accordance with IRC §

401(a)(28)(C), Section 3(18) of ERISA, and any regulations thereunder.

140.     The valuations performed by Columbia, which were utilized by and relied on by the TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS, have consistently undervalued WAWA shares in the ESOP, and do not represent adequate consideration or fair market value for Class Members whose shares have been liquidated.

141.     The TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS should have been aware of other valuations performed in conjunction with the 2014 S-Corporation merger and any prudent fiduciary with responsibility of making determinations about the fair market value of WAWA stock would have obtained other valuations of WAWA. Those other valuations would have alerted the TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS that the valuation methodology used in connection with the liquation of WAWA stock from the ESOP participants from 2015 forward did not represent the actual fair market value of WAWA stock.

142.     In the event that TRUSTEE DEFENDANTS or the COMMITTEE DEFENDANTS did not know or were not aware of facts regarding the other valuations, they were required to undertake an appropriate investigation to make that determination in order to fulfill their fiduciary duties and an appropriate investigation would have revealed the other valuations and the fact that the valuation used for the forced sale did not reflect the fair market value of the WAWA stock.

143.     As a result of causing or permitting the forced sale of the Terminated Pre-2014 Employees and Retired Employees' WAWA stock pursuant to unreliable appraisals, the COMMITTEE DEFENDANTS and the TRUSTEE DEFENDANTS breached their fiduciary duties under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D), and

43

caused losses to the Class Members' accounts and to the Plan.

## COUNT II
### Engaging in Prohibited Transactions Forbidden by ERISA §§ 406(a)(1)(A) & (D), 29 U.S.C. §§ 1106(a)(1)(A) & (D) Against Trustee Defendants and WAWA On Behalf of the Class

144.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

145.     ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

146.     ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include (A) any fiduciary of a plan and (C) an employer of whose employees are covered by such plan. Defendant WAWA qualified as "party in interest" within the meaning of ERISA § 3(14).

147.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules in ERISA § 406(a) for sale of employer securities to or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

148.     ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

149.     The TRUSTEE DEFENDANTS held legal title to the WAWA stock allocated to the individual ESOP accounts of Plaintiffs and other members of the Plaintiff Class. Based on

that authority and the authority of the Plan Document, TRUSTEE DEFENDANTS sold the

WAWA stock allocated to the individual ESOP accounts of Plaintiffs and other members of the

Plaintiff Class.

150.     The TRUSTEE DEFENDANTS failed to conduct an independent and prudent

investigation into the fair market value of WAWA stock before entering into the forced sale

transactions with WAWA based on the Columbia valuations.

151.     By failing to ensure that WAWA paid no less than fair market value for the

WAWA stock purchased from Plaintiffs and other Class Members, the TRUSTEE

DEFENDANTS caused the ESOP to engage in prohibited transactions in violation of ERISA

§§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), the forced sales made based on

unreliable appraisals.

152.     As the purchaser of WAWA stock for less than fair market value for the shares

held by the Class who were participants in the ESOP, Defendant WAWA was aware of sufficient

facts that the purchase constituted a prohibited transaction with party-in-interest. As a party-in-

interest, Defendant WAWA is liable for the violations of ERISA § 406(a)(1)(A) and (D), 29

U.S.C. § 1106(a)(1)(A) and (D).

153.     As a result of causing or participating in a prohibited transaction, the TRUSTEE

DEFENDANTS and WAWA caused losses to the Class Members' accounts and to the Plan, and

have profited from the prohibited transaction.

## COUNT III
**Engaging in Prohibited Transactions Forbidden by ERISA §§ 406(b),
29 U.S.C. §§ 1106(b) Against Defendants Wood and Stoeckel
On Behalf of the Class**

154.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

155.    ERISA § 406(b), 29 U.S.C. § 1106(b) mandates that a fiduciary with respect to a plan shall not (1) "deal with the assets of the plan in his own interest or for his own account," (2) "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or (3) "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

156.    Defendants WOOD and STOECKEL were fiduciaries of the Plan as a result of being Trustees of the ESOP.

157.    By approving the liquidations of WAWA stock in their capacity as Trustees at a price that did not represent fair market value and that increased the value of their own shares, Defendants WOOD and STOECKEL dealt with the assets of the ESOP in their own interest, acted in a transaction on behalf of the ESOP even though their interests and the WOOD family's interests were adverse to the ESOP and Class Members, and received consideration for their personal account in connection with those transactions. In addition, by approving the liquidations of WAWA stock in his capacity of Trustee, Defendant WOOD dealt with the assets of the ESOP in his own interest, acted on behalf of the ESOP even though his interests were adverse to the ESOP and Class Members, and received consideration for his personal account in connection with those transactions because the liquidations maintained the WOOD family's majority interest in WAWA and solidified the WOOD family's control of WAWA. As a result of engaging in those acts, Defendants WOOD and STOECKEL violated ERISA § 406(b), 29 U.S.C. § 1106(b).

158.    As a result of participating in these prohibited transactions, Defendants WOOD and STOECKEL caused losses to the Class members and have profited from the prohibited transactions.

**COUNT IV**
**Breach of Fiduciary Duty Under ERISA § 404(a)(1)(D), 29 U.S.C. §§ 1104(a)(1)(D) Against the Trustee Defendants and the Committee Defendants Regarding the Transfer On Behalf of the Class**

159.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

160.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the ESOP, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

161.    Among other duties, the TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS had an obligation to follow the terms of the Plan Document, including § 11.2 to the extent that those terms were consistent with ERISA.

162.    Section 11.2 of the 2014 Plan Document provides in relevant part that the assets of the Plan shall not "be transferred to any other qualified retirement plan unless each Participant would receive a benefit after such … transfer (assuming the Plan then terminated) which is of actuarial value equal to or greater than the benefit he would have received from his Accounts if the Plan had been terminated on the day before such … transfer."

163.    Section 5.2(d) of the 2014 Amendment and Section 5.2(h) of the 2016 Plan Document provided that "[a]ll liquidated proceeds from the ESOP Stock Account of any such participant, along with amounts held in the Participant's ESOP Cash Account, shall be transferred to the Participant's account in the 401(k) Plan" and "[i]f the Participant does not have

47

an account in the 401(k) Plan at the time of the transfer, the Trustee" was required to direct "the plan administrator of the 401(k) Plan to establish an account on behalf of the Participant."

164.    To the extent that the transfer of accounts occurred on the same day as the liquidation of the accounts, the assets transferred did not have an actuarial value equal to or greater than the benefit that those participants would have had on the day before the transfer because the day before the transfer, they were invested in WAWA stock and immediately after the transfer, they were invested in cash that was not a value equivalent to the value of WAWA stock on the day before the transfer.

165.    No prudent and loyal fiduciary would have transferred the assets from the ESOP when he knew or should have known that the value of those accounts would be substantially less immediately after the transfer due to the incorrect valuations used as part of the liquidation.

166.    As set forth above, the TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS should have been aware of facts about other valuations that should have alerted them that the valuation used in connection with the liquidation was not correct. In the event that TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS did not know or were not aware of facts that WAWA employee accounts were not equal in value after the transfer, they were required to undertake an appropriate investigation to make that determination in order to fulfill their fiduciary duties and to comply with Section 11.2 of the Plan Document.

167.    As a result, by transferring the assets, the TRUSTEE DEFENDANTS and the COMMITTEE DEFENDANTS breached their fiduciary duties under ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A),(B) and (D).

## COUNT V
### Breach of Fiduciary Duty Under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B), Against the Committee Defendants and Trustee Defendants For Misrepresentations On Behalf of the Retired Employee Subclass

168.    Plaintiffs Cunningham and DiDonato incorporate the preceding paragraphs as though set forth herein.

169.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the ESOP, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

170.    A plan fiduciary's duties of loyalty and prudence includes a duty to disclose and inform. These duties not only require that a fiduciary comply with the disclosure provisions in Title I of ERISA, but also entails: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

171.    Defendants breached these duties to Plaintiffs Cunningham and DiDonato as follows with regard to statements or omissions as follows:

a)      The COMMITTEE DEFENDANTS and WAWA misled the Retired Employee Subclass Participants by promising in SPDs, the Offering Memorandum, and other communications that Terminated Pre-2014 Employee Participants would have their benefits paid in the same form and manner as retirement benefits as described in the Section of the SPD titled "Retirement Benefits;"

b)    The COMMITTEE DEFENDANTS and WAWA misled the Retired Employee

Subclass Participants by promising in SPDs that WAWA would not divest Plan participants of

any entitlement to benefits, including but not limited to their right to continue to hold WAWA

stock;

c)    WAWA and STOECKEL misled the Retired Employee Subclass Participants by

assuring them that they had the rights of owners, would remain in the ESOP until at least age 68,

and would be able to use ESOP benefits to supplement their retirement income; and

172.    As former employees of WAWA with account balances worth more than $5,000,

the Retired Employee Subclass had the option under Article VI of the Plan to choose either to

remain invested in WAWA stock in the ESOP or to elect to receive a distribution from the Plan.

By virtue of the fact that Plaintiffs Cunningham, DiDonato and the Retired Employee Subclass

did not elect to receive a distribution prior to 2015 and they chose to remain invested in WAWA

stock in the ESOP.

173.    By choosing to remain invested in WAWA stock, Plaintiffs Cunningham,

DiDonato and the Retired Employee Subclass were harmed by Defendants failing to honor their

promises and representations that former employees would be able to remain invested in WAWA

stock through the ESOP until retirement age.

### COUNT VI
**Violation of the Anti-Cutback Provision of ERISA § 204(g), 29 U.S.C § 1054(g)**
**Against Defendant WAWA**
**On Behalf of the Retired Employee Subclass and the Terminated Pre-2014 Employee**
**Subclass**

174.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

175.    ERISA § 204(g), 29 U.S.C. § 1054(g) provides that "[t]he accrued benefit of a

participant under a plan may not be decreased by an amendment of the plan." Moreover, ERISA

§ 204(g), 29 U.S.C. § 1054(g). provides that "a plan amendment which has the effect of (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits."

176.    Under 26 C.F.R. § 1.411(d)-3(a)(1), "a plan amendment includes any changes to the terms of the plan."

177.    ERISA § 3(23), 29 U.S.C. § 1002(23), defines "accrued benefit" in relevant part as follows: "the case of a plan which is an individual account plan, the balance of the individual's account."

178.    An accrued benefit includes not only the "net effect" of the dollars earned and/or paid under the Plan, but also the features and elements of the benefit formula itself. As such, the accrued benefits protected from elimination by amendment under ERISA § 204(g) includes the conditions on which the benefits are to be paid under the Plan.

179.    Accrued benefits are considered "decreased" for purposes of ERISA § 204(g) not only when they are reduced in size or eliminated entirely, but also when the plan imposes new conditions or materially greater restrictions on their receipt.

180.    Under the terms of the Plan Document prior to the 2014 Amendment, a Terminated Pre-2014 Employee Subclass Participant who terminated on or after January 1, 2015 was entitled to remain a participant in the ESOP, continue to hold WAWA stock in his or her individual ESOP account until age 68, and receive WAWA stock as an optional form of benefit. Prior to the 2014 Amendment, such former employee participants were entitled to the same benefit distribution options under the ESOP Plan document as a participant who had met Normal Retirement Date (defined in the Plan Document as a Participant's 62nd birthday). These benefit rights were and are accrued benefits.

181.     Under the terms of the Plan Document prior to the 2015 Amendment, a Retired Employee Subclass Participant was entitled to remain a participant in the ESOP, continue to hold WAWA stock in his or her individual ESOP account until age 68, and receive WAWA stock as an optional form of benefit. Prior to the 2015 Amendment, a Retired Employee Subclass Participant was entitled to the same benefit distribution options under the ESOP Plan document as a participant who had met Normal Retirement Date (defined in the Plan Document as a Participant's 62nd birthday). These benefit rights were and are accrued benefits.

182.     By divesting and thereby eliminating the right of Plaintiffs, the Retired Employee Subclass and the Terminated Pre-2014 Employee Subclass to continue holding WAWA stock in their individual ESOP accounts, and by the forced sale of their WAWA stock, the 2015 Amendment and the 2014 Amendment decreased, and, in fact, eliminated accrued benefits of the Retired Employee Subclass and the Terminated Pre-2014 Employee Subclass, respectively.

183.     The IRS Regulations which interpret ERISA § 204(g), 26 C.F.R. § 1.411(d)-4, A-1; 26 C.F.R. § 1.411(d)-4, A-2(a)(1), define accrued benefits protected from cutback – referred to in the Internal Revenue Code as "411(d)(6) protected benefits" – to include "optional forms of benefits." The IRS Regulations, 26 C.F.R. § 1.411(d)-3(g)(6)(ii), define the term "optional form of benefit" to "mean[] a distribution alternative (including the normal form of benefit) that is available under the plan with respect to an accrued benefit or a distribution alternative with respect to a retirement-type benefit."

184.     Prior to January 1, 2014, the written instrument of the Plan, which was the 2010 Plan Document in Section 6.5(e)(1), provided that the distribution of a Participant's benefit shall be made in whole shares of ESOP Stock allocated to this ESOP Stock Account and equal to the remaining balance in this Account. The 2014 Amendment eliminated this accrued benefit in the

event that WAWA became an S-Corporation.

185.    The IRS Regulations 26 C.F.R. § 1.411(d)-3(g)(6)(ii) and 26 C.F.R. § 1.411(d)-4, A-1(b)(1) explain that "optional forms of benefit" include "terms relating to the payment schedule, timing, commencement, medium of distribution (e.g., in cash or in kind), election rights, differences in eligibility requirements, or the portion of the benefit to which the distribution alternative applies."

186.    The IRS Regulations, 26 C.F.R. § 1.411(d)-4, A-2(3)(i), explain that "[t]he prohibition against the reduction or elimination of section 411(d)(6) protected benefits already accrued applies to … transfers, and transactions amending or having the effect of amending a plan or plans to transfer plan benefits." The 2014 Amendment and the 2015 Amendment, as well as the 2016 Plan Document expressly requires the liquidation of the Class Members' ESOP stock and the forced transfer of the proceeds out of the ESOP. As a result, the 2014 Amendment and the 2015 Amendment, as well as the 2016 Plan Document, eliminated an accrued benefit of the Retired Employee Subclass and the Terminated Pre-2014 Employee Subclass.

187.    Moreover, the IRS regulations governing transfers also require "each participant [to] have the same account balance after the transfer as before the transfer." 26 C.F.R. § 1.414(l)-1(d)(3), (m)(1), (o). As a result of using valuation that failed to appropriately value the WAWA stock and the imposition of the $50.00 "distribution fee," the account balances of Plaintiffs, the Retired Employee Subclass and the Terminated Pre-2014 Employee Subclass were reduced upon transfer.

188.    As a result, the 2014 Amendment and 2015 Amendment constituted a prohibited cut back of benefits in violation of ERISA § 204(g), 29 U.S.C. § 1054(g) as to Terminated Pre-2014 Employee Subclass and the Retired Employee Subclass, respectively.

189.     As such, Plaintiffs and the Class are entitled to benefits for which they are eligible

in conformity with the provisions of the ESOP Plan document as if the 2014 Amendment and

2015 Amendment had not been implemented, as well as the payment of any benefits, lost

investment earnings, dividends, tax distributions, interest, and distribution charges which may be

owing.

**COUNT VII**
**Invalidation of the 2015 Amendment & Enforcement of the Terms of the Plan Pursuant to**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Against All Defendants**
**On Behalf of the Retired Employee Subclass**

190.     Plaintiffs Cunningham and DiDonato incorporate the preceding paragraphs as

though set forth herein.

191.     ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring

a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the

terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of

ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the

plan.

192.     Relief is unavailable under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) or

the remedy under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) is not adequate because the

terms of the Plan, as reflected in the 2016 Plan Document, now include the terms of the 2015

Amendment. Therefore, a claim challenging the validity of the 2015 Amendment is properly

brought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

193.     As a matter of both federal common law and the common law of contract, which

apply to ERISA plans, the terms of the Plan are fixed at the time of acceptance by the

employee-participant, which is completed by performance. At the latest, once an employee

separates from employment, the terms of a pension plan in existence at the time of separation of

employment are the terms that govern the benefits owed to and to be paid to the participant.

194.    As a matter of contract law, the 2015 Amendment is invalid to the extent that it applies to participants of the ESOP who terminated, retired, or otherwise completed performance before the effective date.

195.    As a result, Plaintiffs Cunningham and DiDonato and the Retired Employee Subclass are entitled to have the 2015 Amendment declared invalid as to them, to a declaration that their rights and benefits are and will be determined under the Plan in effect when they terminated or retired, and, as necessary, Plaintiffs and the Retired Employee Subclass are entitled to have the Plan reformed accordingly and/or to an injunction requiring administration of the Plan in a manner consistent with the terms of the Plan in existence at the time of their retirement.

## COUNT VIII
### Violation of ERISA § 102, 29 U.S.C. § 1022, Against the Committee Defendants On Behalf of the Retired Employee Subclass and the Terminated Pre-2014 Employee Subclass

196.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

197.    ERISA § 102(a), 29 U.S.C. § 1022(a), requires that the SPDs must "be written in a manner calculated to be understood by the average plan participant" and to "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

198.    ERISA § 102(b), 29 U.S.C. § 1022(b), requires the plan administrator to furnish plan participants with an SPD that includes a description of the provisions providing for nonforfeitable pension benefits, and circumstances which may result in disqualification, ineligibility, or loss of benefits.

199.    The DOL Regulations implementing ERISA § 102, 29 C.F.R. § 2520.102-2(a),

reiterate that the SPD "shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan." 29 C.F.R. § 2520.102-2(a) specifies that in order to fulfill these requirements, the plan administrator must "tak[e] into account such factors such as *the level of comprehension and education of the typical participants in the plan* and the complexity of the terms of the plan." 29 C.F.R. § 2520.102-2(a) further explains that an SPD "will usually require … the elimination of long, complex sentence. . .[and] the use of clarifying examples and illustrations" to make the terms of the SPD understandable to the average participant.

200.    To the extent that the terms of the Plan did not actually provide the Retired Employee Subclass participants and the Terminated Pre-2014 Employee Subclass participants with the right to have their benefits paid in the same form and manner as retirement benefits as described in the SPD, the COMMITTEE DEFENDANTS violated their duties under ERISA § 102(a), 29 U.S.C. § 1022(a), by furnishing Plaintiffs and these Subclass Members with SPDs that promised that former employees would have their benefits paid in the same form and manner as retirement benefits as described in the Section of the SPD titled "Retirement Benefits."

201.    To the extent that the terms of the Plan did not actually provide the Retired Employee Subclass participants and the Terminated Pre-2014 Employee Subclass participants with the right not to be divested of any entitlement to benefits, including their right to continue to hold WAWA stock, the COMMITTEE DEFENDANTS violated their duties under ERISA § 102(a), 29 U.S.C. § 1022(a), by furnishing Plaintiffs and these Subclass Members with SPDs that promised that WAWA would not divest Plan participants of any entitlement to benefits, including their right to continue to hold WAWA stock.

202.    As former employees of WAWA with account balances worth more than $5,000, these Subclass members had the option under Article VI of the pre-Amendment Plan to choose either remain invested in WAWA stock in the ESOP or to elect to receive a distribution from the Plan. By virtue of the fact that Plaintiffs Cunningham and DiDonato and the Retired Employee Subclass did not elect to receive a distribution prior to 2015, they chose to remain invested in WAWA stock in the ESOP.

203.    Plaintiffs, the Retired Employee Subclass and the Terminated Pre-2014 Employee Subclass were harmed as a result of the COMMITTEE DEFENDANTS' violations with respect to the SPD because they were divested of their right and ability to hold WAWA stock in their WAWA ESOP accounts when WAWA purchased the WAWA stock in their individual ESOP accounts and forced them to take a distribution of their ESOP accounts.

**COUNT IX**
**Violation of ERISA § 404(a)(A)&(B), 29 U.S.C. 1104(A)&(B), Against Defendant WAWA On Behalf of the Class**

204.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

205.    Pursuant to Sections 9.1. and 10.1 of the 2014 ESOP Plan document, WAWA acting by appropriate resolution of its Board of Directors had the power and responsibility for appointing and removing respectively the Trustee and Administrator of the ESOP, and appointing a new Trustee or Trustees and/or Administrator in their place as well as entering into any Trust Agreement.

206.    Pursuant to this authority, Defendants WAWA had a duty to monitor the TRUSTEE DEFENDANTS' conduct and the COMMITTEE DEFENDANTS' conduct, and to take appropriate action if those Defendants were not adequately protecting the interests of the ESOP participants.

207.    Defendant WAWA knew or, in the exercise of reasonable diligence, should have known that the TRUSTEE DEFENDANTS and/or the COMMITTEE DEFENDANTS had failed to conduct a reasonable investigation of the price of WAWA stock at which all members of the Class had their stock liquidated, had failed to determine whether the divestiture of the ESOP accounts for the Retired Employee Subclass was consistent with the terms of the Plan document and representations made to them, had failed to honor promises and representations in disclosures made to ESOP participants, specifically about the ability of the Retired Employee Subclass and the Terminated Pre-2014 Employees to remain invested in WAWA stock through the ESOP.

208.    By failing to properly monitor and/or take appropriate action against, including the removal of, the TRUSTEE DEFENDANTS and/or the COMMITTEE DEFENDANTS, Defendant WAWA breached its fiduciary duties under ERISA by failing to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, all in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

209.    As a result of the breaches by Defendant WAWA, the Plan suffered a loss and/or the participants who are members of the Class correspondingly also suffered losses to their individual accounts.

**COUNT X**
**Violation of ERISA § 410 & ERISA § 404(a)(1)(A), (B) Against All Defendants**
**On Behalf of the Class**

210.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

211.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [ERISA Part IV] shall be void as against public policy." As ERISA § 403(a) and ERISA § 404(a) are both under Part IV of ERISA, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA 410(a) unless there is an exception or exemption. No such exemption or exception is applicable here.

212.     Section 10.6 of the 2016 Plan Document purports to indemnify "each member of the Committee and any other person who is an Employee or director of the Company" for any "expenses (other than amounts paid in settlement to which the Company does not consent) reasonably incurred by him in connection with any action to which he may be a party by reason of his performance of administrative functions and duties under the Plan, except in relation to matters to which he shall be adjudged in such action to be personally *guilty of willful misconduct in the performance of his duties*."

213.     To the extent that Section 10.6 of the 2016 Plan Document (or any other agreement) attempts to relieve the TRUSTEE DEFENDANTS or the COMMITTEE DEFENDANTS of their responsibility or liability to discharge their fiduciary duties or to have WAWA (an ESOP-owned company) and thereby the ESOP be responsible for their liability or breaches, Section 10.6 is void as against public policy.

214.    To the extent that any of the fiduciaries of the Plan would agree to such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

215.    As a result of the foregoing, Section 10.6 should be declared void *ab initio* and the terms of the Plan document should be reformed to strike these provisions or modified accordingly.

## ENTITLEMENT TO RELIEF

216.    By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiffs and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including recovery for the Plan of any losses to the Plan resulting from each such breach and for such other equitable or remedial relief as the Court may deem appropriate.

217.    By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiffs and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin the ongoing breach of fiduciary duty, the ongoing violations of ERISA, and the ongoing practices identified above that violate the terms of the Plan, and to obtain other appropriate equitable relief to redress such violations

and/or to enforce the provisions of ERISA and the terms of the Plan.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against the Defendants for the following relief:

A.      Declare that Plaintiffs and the Class are entitled to have their benefits calculated and/or paid in conformity with the terms of the Plan document in effect at the time of their termination;

B.      Declare that Defendants and each of them have breached their fiduciary duties to the Class and/or knowingly participated in breaches of fiduciary duty;

C.      Enjoin Defendants and each of them from further violations of their fiduciary responsibilities, obligations and duties;

D.      Order that Defendants found to have breached his/her/its fiduciary duties to the ESOP to jointly and severally make good to the ESOP and/or to any successor trust(s) the losses resulting from their breaches and restore any profits they have made through use of assets of the ESOP;

E.      Order that Defendants provide other appropriate equitable relief to the ESOP, Plaintiffs, and the Class, including but not limited to, surcharge, rescission of the forced sale(s), reinstatement in the Plan, reformation of the Plan, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

F.      Declare any transaction that constitutes a prohibited transaction void and (1) requiring any fiduciary or party-in-interest to disgorge any profits made, (2) declaring a constructive trust over the proceeds of any such transaction or (3) any other appropriate equitable relief, whichever is in the best interest of the WAWA ESOP;

G.      Invalidate the 2015 Amendment as applied to the Retiree Subclass;

H.      Reform the terms of the Plan document to be consistent with the SPD and eliminate the applicability of the 2014 Amendment as to any participant who terminated prior to its effective date;

I.      Remove the TRUSTEE DEFENDANTS and COMMITTEE DEFENDANTS from their role as fiduciaries of the ESOP, enjoining any of the breaching fiduciaries from acting as fiduciaries for any plan that covers the employees of WAWA and appointing an Independent Fiduciary to manage the ESOP at the expenses of the breaching fiduciaries;

J.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class to make them whole for any injury that they suffered as a result of the breaches of fiduciary duty in accordance with the Court's declaration with respect to the terms of the Plan;

K.      Order pursuant to ERISA § 206(d)(4) that any amount to be paid to or necessary to restore Plaintiffs' ESOP account can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan to the extent of his liability;

L.      Declare that any indemnification agreement between the Defendants and the ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

M.      Require Defendants to pay attorney's fees and the costs of this action pursuant to ERISA §502(g)(1), 29 U.S.C. § 1132(g)(1) and/or ordering the payment of reasonable fees and expenses of this action to Plaintiffs' Counsel on the basis of the common benefit and/or common fund doctrine (and/or other applicable law) out of any money or benefit recovered for the Class and Subclasses in this action;

N.      Order Defendants to pay pre-judgment interest and post-judgment interest; and

O.      Award any such other relief that the Court determines that Plaintiffs and the Class are entitled pursuant to ERISA §502(a), 29 U.S.C. § 1132(a) and pursuant to Rule 54(c) of the

Federal Rules of Civil Procedure or otherwise.

Dated: August 8, 2018                    Respectfully submitted,


Gary L. Azorsky (PA Bar No. 38924)
Raymond M. Sarola (PA Bar No. 318164)
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
3 Logan Square, 1717 Arch Street
Suite 3610
Philadelphia, PA 19103
Tel: (267) 479-5700
Fax: (267) 479-5701
Email: gazorsky@cohenmilstein.com
Email: rsarola@cohenmilstein.com

R. Joseph Barton (*pro hac vice to be filed*)
**BLOCK & LEVITON LLP**
1735 20th Street
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email:  jbarton@blockesq.com

Daniel Feinberg (*pro hac vice to be filed*)
**FEINBERG, JACKSON, WORTHMAN**
**& WASOW LLP**
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994
Email: dan@feinbergjackson.com

Richard E. Donahoo, (*pro hac vice to be filed*)
**DONAHOO & ASSOCIATES, P.C.**
440 W. First Street, Suite 101
Tustin, California 92780
Tel: (714) 953-1010
Fax: (714) 953-1777
Email: rdonahoo@donahoo.com

*Attorneys for Plaintiffs*