**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN J CUNNINGHAM, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. No. 18-3355** |
| | : | |
| **WAWA, INC., et al.,** | : | |
| **Defendants.** | : | |

## O R D E R

Plaintiffs John Cunningham, David Ciuffetelli, Benjamin DiDonato, and John Rucki, Jr. challenge two amendments to Defendant Wawa, Inc.'s Employee Stock Ownership Plan that eliminated their right to hold Wawa stock through age 68 and forced them to sell their shares at a purportedly unfair price. (Compl., Doc. No. 1.) Plaintiffs seek to certify a Class of all terminated employee participants in the ESOP whose accounts were liquidated after September 12, 2015 for Counts I–IV, IX, and X in their Complaint. (Doc. No. 56.) They also seek to certify a Subclass of: (1) all Class members who participated in the ESOP before January 1, 2014 and were terminated on or after January 1, 2015 for Counts VI and VIII in their Complaint; and (2) all Class members who retired between January 1, 2011 and December 31, 2014 for Counts V–VIII in their Complaint. (Id.) Defendants challenge class certification as to only three claims. (Doc. No. 57.) I will grant Plaintiffs' Motion to Certify.

## I.     FACTUAL BACKGROUND

Established in 1992, the Wawa Employee Stock Ownership Plan is an ERISA-qualified employee benefit plan sponsored by Defendant Wawa; its primary asset is Wawa equity. (Compl. ¶¶ 3, 16, 29; Answer ¶¶ 3, 16, 29, Doc. No. 49.) The Retirement Plans Committee is the ESOP administrator. (Compl. ¶ 17; Answer ¶ 17.) Individual Defendants Culotta, Eckhardt, Morey, Pulos, Swartz, and Wiggins are Committee members and Wawa officers. (Compl. ¶¶ 18–24;

Answer ¶¶ 18–24.)  Individual Defendants Wood, Wright, and Stoeckel are the Trustees of the ESOP.  (Compl. ¶¶ 25–27; Answer ¶¶ 25–27.)

The Wawa ESOP initially permitted all retired and terminated employees—including those terminated for cause—to continue to hold Wawa stock through the ESOP after their Wawa employment ended.  (See ESOP (eff. Jan. 1, 2004), Doc. No. 56-3; see also Peterson Dep. 120:21– 121:8, Doc. No. 77-3, Civ. No. 16-497; accord. Stipulation ¶ 2, Doc. No. 54.)  As required by ERISA, Wawa periodically provided Summary Plan Descriptions of the Plan terms.  (Compl. ¶¶ 37, 43, 46; Answer ¶¶ 37, 43, 46; Peterson Dep. 70:18–25); see also 29 U.S.C. § 1022(a).  Each SPD stated that terminated employee participants would be "paid in the same form and manner as retirement benefits," and that "no amendment to the Plan will reduce the benefit you have already earned or divest you of any entitlement to a benefit."  (See 2004 SPD 8–9, Doc. No. 77-4, Civ. No. 16-497; 2006 SPD 9, Doc. No. 77-5, Civ. No. 16-497; 2011 SPD 9, Doc. No. 77-6, Civ. No. 16-497; 2014 SPD 12, Doc. No. 77-7, Civ. No. 16-497; accord. Joint Stipulation ¶ 1, Doc. No. 46.) The SPDs also provided that "if the total value of your benefit is more than $5,000, you may elect to delay payment until the April 1 of the year following the year you reach age 68."  (See 2011 SPD 9; 2014 SPD 12; see also 2004 SPD 8–9; 2006 SPD 9 (until 2011, former employees could hold Wawa stock until age 70½).)

Beginning in 2014, Wawa amended the ESOP to remove former employees from the Plan. (ESOP (eff. Jan. 1, 2014) Art. V § 5.2(d), Doc. No. 77-9, Civ. No. 16-497.)  The 2014 Amendment required the Trustee to liquidate the ESOP stock of any Participant who terminated employment *after* January 1, 2015.  (Id.)  The 2014 Amendment stated that all liquidated proceeds would be transferred to Participants' 401(k) accounts.  (Id.)  The Parties dispute when Defendants informed Participants about this Amendment.  Plaintiffs allege that they did not learn about the 2014

2

Amendment until "at least mid-August 2014 and possibly as late as sometime in 2015." (Compl. ¶ 62.)

On August 7, 2015, Wawa amended the ESOP again—this time requiring the Trustee to liquidate the ESOP stock of any Participant who terminated employment *before* January 1, 2015. (ESOP Amendments, Doc. No. 77-12, Civ. No. 16-497.) On August 10, 2015, Wood and Stoeckel (the ESOP Trustees) sent a letter to all terminated employees informing them that Wawa had adopted the 2015 Amendment. (See Doc. No. 77-21, Civ. No. 16-497.) On September 11, 2015, Defendants began effectuating that Amendment: terminated participants received $6,940 per share of Wawa stock and were required to pay a $50.00 distribution fee. (Compl. ¶¶ 77, 80, 86, 103; Answer ¶¶ 77, 80, 103.)

Plaintiffs Cunningham, Ciuffetelli, Rucki, and DiDonato are terminated employee ESOP participants who were divested of their Wawa stock because of the Plan Amendments. Wawa terminated: (1) Cunningham in September 2011; (2) DiDonato in September 2013; (3) Rucki in January 2015; and (4) Ciuffetelli in August 2015. (Compl. ¶¶ 12–15; Answer ¶¶ 12–15.) Wawa liquidated shares in Cunningham, Ciuffetelli, and Rucki's ESOP accounts in March 2016, and DiDonato's in March 2018. (Id.)

## II.    PROCEDURAL HISTORY

On February 1, 2016, two terminated Wawa employees, acting on behalf of a proposed Class of terminated Wawa employees, challenged the 2015 Amendment. (Compl., Doc. No. 1, Civ. No. 16-497.) The case, *Pfeifer v. Wawa*, settled on August 31, 2018. The *Pfeifer* settlement Class included: (1) ESOP participants who ended employment with Wawa *before* January 1, 2015; and (2) ESOP participants who retired *before* January 1, 2011. (Doc. Nos. 133, 134, Civ. No. 16-497; see also Compl. ¶ 5.) These Class participants had their ESOP accounts liquidated on

3

September 11, 2015.  (Id.)

On August 8, 2018, while the *Pfeifer* settlement was pending, Plaintiffs Cunningham, Ciuffetelli, Rucki, and DiDonato filed the instant Complaint against Wawa and its fiduciaries, on behalf of another group of terminated Wawa employees.  (Doc. No. 1.)  These Plaintiffs similarly allege that:

- Count I: The Trustee and Committee Defendants breached their fiduciary duties by authorizing the ESOP's sale of Wawa stock in the ESOP accounts of Plaintiffs and the Class at a price below fair market value.  ERISA §§ 404(a)(1)(A), (B), (D), 29 U.S.C. § 1104(a)(1)(A), (B), (D);

- Count II: The Trustee Defendants and Wawa unlawfully caused the Plan to engage in a related party transaction (the forced sale) at a price below fair market value.  ERISA § 406(a)(1)(A), (D), 29 U.S.C. § 1106(a)(1)(A), (D);

- Count III: The Trustee Defendants unlawfully caused the Plan to engage in a related party transaction (the forced sale) for inadequate consideration.  ERISA § 406(b), 29 U.S.C. §1106(b);

- Count IV: The Trustee and Committee Defendants breached their fiduciary duties by authorizing the forced sale because the sale failed to follow Plan § 11.2, which prohibits any Plan transfers that decrease the value of the Plan.  ERISA § 404(a)(1)(D), 29 U.S.C. §§ 1104(a)(1)(D);

- Count V: The Trustee and Committee Defendants breached their fiduciary duties by misrepresenting that terminated employee participants could hold Wawa stock in their ESOP accounts until age 68.  ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B);

- Count VI: Wawa breached ERISA's anti-cutback provision by eliminating terminated employees' rights to hold Wawa stock in the ESOP through age 68.  ERISA §204(g), 29 U.S.C. § 1054(g).  I dismissed this claim in part.  (Doc. No. 45);

- Count VII: The 2015 Amendment should be invalidated under unilateral contract principles because it violated the terms of the Plan then in effect.  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

- Count VIII: The Committee Defendants violated ERISA by furnishing SPDs that were materially misleading.  ERISA §102, 29 U.S.C. § 1022;

- Count IX: Wawa breached its fiduciary duties by failing to monitor the Trustee and Committee Defendants' activities.  ERISA § 404, 29 U.S.C. § 1104; and

- Count X: Defendants' attempt, through the Plan, to relieve its fiduciaries of liability for fiduciary breaches is void.  ERISA §§ 410, 404, 29 U.S.C. §§ 1110, 1104.

Plaintiffs contend that they are "entitled to sue the fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109."  (Compl. ¶ 216.)  They further contend that they are entitled to relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  (Id. at ¶ 217.)

On January 10, 2019, I largely denied Defendants' Motion to Dismiss, in which they raised the same arguments I rejected in *Pfeifer*.  (Doc. No. 45.)

## III.    THE INSTANT MOTION

On March 18, 2019, Plaintiffs moved for class certification.  (Doc. No. 56); Fed. R. Civ. P. 23.  Plaintiffs seek to certify a Class respecting Counts I–IV, IX, and X:

All Participants in the Wawa, Inc. Employee Stock Ownership Plan ("Wawa ESOP") with account balances greater than $5,000.00 as of the date that they terminated employment whose accounts were liquidated on or after September 12, 2015 and the beneficiaries of such participants.

(Pl.'s Mot. Class Cert. ¶ 2, Doc. No. 56.)

Plaintiffs also seek to certify two Subclasses.  As to Counts VI and VIII, Plaintiffs seek to certify the "Terminated Pre-2014 Employee Subclass," comprising:

All Participant members of the Class who were employed by Wawa and participated in the ESOP before January 1, 2014 and who terminated employment on or after January 1, 2015 except for Participants whose accounts were liquidated due to death, disability or a voluntary request for distribution, and the beneficiaries of such participants.

(Id. at ¶ 3.)  On Counts V–VIII, Plaintiffs seek to certify the "Retired Employee Subclass,"

5

comprising:

> All Participant members of the Class who Retired between January 1, 2011 and December 31, 2014 except for Participants whose accounts were liquidated due to death, disability or a voluntary request for distribution, and the beneficiaries of such Participants.

(Id. at ¶ 4.)  Excluded from the Class and Subclasses are: (a) Defendant Trustees and members of the Defendant Committee and their immediate families; (b) the current officers and directors of Wawa and their immediate families; (c) members of the *Pfeifer* Class; and (d) these individuals' legal representatives, successors, heirs, and assigns.  (Id. at ¶ 5.)

The Parties have stipulated that the Proposed Class and two Subclasses are ascertainable and sufficiently numerous.  (Feb. 27, 2019 Stipulation ¶¶ 4–9, Doc. No. 53.)  The Parties have also stipulated that the following issues are common to all members of the Class or Subclasses:

> (a) whether Defendants Wood and Stoeckel engaged in prohibited transactions in violation of ERISA § 406 in connection with implementation of the 2014 and 2015 Amendments and the liquidation of the Wawa shares in the ESOP accounts of the [C]lass; and (b) whether Wawa breached its fiduciary duties to appropriately monitor the Trustee and Committee Defendants.

(Id. at ¶ 10.)  The Parties have further stipulated that: (1) Counts III and IX are appropriate for class-wide resolution; (2) Class counsel is adequate; (3) Plaintiffs Ciuffetelli and Rucki are adequate Class representatives; and that (4) any claim that meets the requirements of Rule 23(a) may be certified under Rule 23(b)(1) or (b)(2).  (Id. at ¶¶ 12, 14; Mar. 12, 2019 Stipulation ¶¶ 4–6, Doc. No. 55.)

On March 29, 2019, Defendants responded to Plaintiffs' Motion, again making many of the same arguments they raised in *Pfeifer*.  Defendants again contend that Counts V and VIII (the fiduciary duty misrepresentation and SPD misrepresentation claims) cannot be certified because they lack commonality and typicality.  (Doc. No. 57.)  Defendants also contend that Count VII (invalidation of the Plan Amendments) cannot be certified because it is meritless and lacks

commonality and typicality.  (Id.)  Defendants do not concede or challenge certification on the remaining Counts.  (Id.)

On April 18, 2019, I held a hearing at which both parties presented legal argument but no additional evidence.  (See Doc. Nos. 61, 63.)

## IV.    LEGAL STANDARDS

"Class actions are an exception to the general rule that litigation must be conducted by individual named parties."  Shelton v. Bledsoe, 775 F.3d 554, 559 (3d Cir. 2015) (citation omitted). A party seeking to bring a class action "must affirmatively demonstrate his compliance" with Federal Rule of Civil Procedure 23.  Id.  The plaintiff must satisfy "the prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of the class representative."  Id.  "The proposed class must [also] satisfy at least one of the three requirements listed in Rule 23(b)."  Wal-Mart Stores v. Dukes, 564 U.S. 338, 345 (2011).

I "must engage in a 'rigorous analysis' and find each of Rule 23[]'s requirements met by a preponderance of the evidence before granting certification."  Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 358 (3d Cir. 2013) (citations omitted).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim [because] the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  Dukes, 564 U.S. at 351; see also In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316 (3d Cir. 2008) ("An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met.").

Although I certified a similar settlement Class in *Pfeifer*, my analysis in that case is not controlling.  Sullivan v. DB Invs., Inc., 667 F.3d 273, 322 n.56 (3d Cir. 2011) ("While the

standards for class certification are the same for both settlement and litigation classes, certification in the former context need not consider 'whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" (citation omitted)). Wawa raises no suggestion here of intractability. I am thus puzzled as to why Wawa here opposes certification of the same class that it agreed to certify in *Pfeifer* (where it was represented by the same counsel). (See Doc. Nos. 120, 133, Civ. No. 16-497 (agreeing to certify all but the fiduciary duty misrepresentation claim).)

## V.    DISCUSSION

### A. Uncontested Claims

The Parties have stipulated that class treatment is appropriate for Counts III and IX, and Defendants have not challenged certification on Counts I, II, IV, VI, or X. The Parties have also stipulated that Class counsel is adequate, and Defendants have not challenged the adequacy of the Class representatives. Nonetheless, "[e]ven when unopposed, a motion for class certification must be evaluated on the merits." Doughlin v. GreatBanc Trust Co., Inc., 115 F. Supp. 3d 404, 409 (S.D.N.Y. 2015) (citations omitted).

I agree with the Parties that the uncontested claims are appropriate for class-wide resolution. The putative Class will include over one thousand members, and each putative Subclass will include hundreds of members—numbers that easily make "joinder of all members [] impracticable." Fed. R. Civ. P. 23(a)(1); see Mielo v. Steak'n'Shake Operations, Inc., 897 F.3d 467, 486 (3d Cir. 2018) ("[A] plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'" (quoting Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001))); (Downes Decl. ¶ 3, Doc. No. 56-2; Apr. 18, 2019 Hr'g Tr. 18:18–19, Doc. No. 64.)

8

"There are [also] questions of law or fact common to the [C]lass [and Subclasses]" respecting each of these claims, including whether Defendants were fiduciaries, whether Defendants conducted a reasonable investigation into the price of the shares, and whether the Class and Subclass members received a fair price for their shares.   Fed. R. Civ. P. 23(a)(2); In re Schering-Plough Corp. ERISA Litig., No. 03-1204, 2008 WL 4510255, at *4 (D.N.J. Jan. 31, 2008), R. & R. adopted sub nom. 2008 WL 4510039 (D.N.J. Sept. 30, 2008), rev'd in part on other grounds sub nom. 589 F.3d 585 (3d Cir. 2009) ("Schering-Plough") (common questions in ERISA litigation included "whether defendants were fiduciaries; whether defendants breached their duties to the Plan by failing to conduct an appropriate investigation [and] whether the Plan suffered losses") (collecting cases).   A class proceeding will "generate [a] common answer[]" to the question of whether Defendants compensated the Class fairly for its Wawa shares—an answer that will also resolve the valuation claims.   Dukes, 564 U.S. at 350.   Counts VI and X present legal questions regarding ERISA's anti-cutback provision and the ability of Plan Administrators to relieve fiduciary liability that can also be determined on a class-wide basis.

In addition, the proposed Class representatives' claims are typical of the Class: their Wawa stock was sold after the same valuation process as every other Class member.   See Fed. R. Civ. P. 23(a)(3); Cottillion v. United Ref. Co., No. 09-140E, 2013 WL 5936368, at *4 (W.D. Pa. Nov. 5, 2013), aff'd, 781 F.3d 47 (3d Cir. 2015) (plaintiff's anti-cutback claim was typical of the class); Stanford v. Foamex L.P., 263 F.R.D. 156, 168 (E.D. Pa. 2009) (plaintiff's ERISA fiduciary duty claim was typical of the class).   Cunningham, Ciuffetelli, DiDonato, and Rucki are adequate Class representatives because they are Class members and do not have any identifiable "intra-class conflicts" precluding them from defending the Class's interests.   Fed. R. Civ. P. 23(a)(4); Dewey v. Volkswagen Akteingesellschaft, 681 F.3d 170, 184 (3d Cir. 2012).   Proposed Class counsel (the

same lawyers that represented the *Pfeifer* Class) have substantial experience with both class actions and ERISA litigation, and their performance here and in *Pfeifer* well confirms their competence. (See, e.g., Barton Decl. ¶¶ 2, 5, 6, Doc. No. 56-9; Feinberg Decl. ¶¶ 3–4, Doc. No. 56-11; Donahoo Decl. ¶¶ 2, 3, 10, Doc. No. 56-13.)

The Parties have also stipulated that the uncontested claims may be certified under Rule 23(b)(1) or Rule 23(b)(2). (Feb. 27, 2019 Stipulation ¶ 14.) I agree that they satisfy the requirements of Rule 23(b)(1) because prosecuting separate actions would create a risk of adjudications that, "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1); Schering Plough, 589 F.3d at 604 ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.").

They may also be certified under Rule 23(b)(2) because, in effectuating the Plan Amendments, Defendants have "acted or refused to act on grounds that apply generally to the [C]lass [and Subclasses], so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the [C]lass [and Subclasses] as a whole." Fed. R. Civ. P. 23(b)(2); see Cottillion, 2013 WL 5936368, at *6 ("Courts routinely have certified classes pursuant to [Rule 23(b)(2)] where . . . an ERISA plan administrator makes a uniform decision about administering the Plan as it applies to the putative class members.").

Plaintiffs contend that the uncontested claims may also be certified under Rule 23(b)(3). Because the Class and Subclasses may be certified under Rules 23(b)(1) and (2), however, I need not consider whether the Class and Subclasses may be certified under Rule 23(b)(3). Stoetzner v. United States Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990) ("We have held that 'an action

maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3), which serve no useful purpose under (b)(2).'" (quoting Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 253 (3d Cir. 1975))); Mehling v. New York Life Ins. Co., 246 F.R.D. 467, 475 n.6 (E.D. Pa. Oct. 24, 2007) ("A class that can be certified pursuant to Rules 23(b)(1) and (b)(2) should not be treated as a 23(b)(3) class action.").

In sum, I will certify the Class to pursue Counts I–IV, IX, and X, and the Subclasses to pursue Count VI.

## B. Count V

Plaintiffs here allege that the Trustee and Committee Defendants breached their fiduciary duties by misrepresenting to the Retired Employee Subclass that they were entitled to hold their shares in Wawa stock through age 68.  (Compl. ¶¶ 168–73); ERISA § 404(a)(1)(A), (B), 29 U.S.C. §§ 1104(a)(1)(A), (B).  Plaintiffs thus seek reformation and surcharge.  See Osberg v. Foot Locker, Inc., 862 F.3d 198, 211–12 (2d Cir. 2017), cert. denied 138 S. Ct. 981 (2018) (reformation is available to plaintiffs suing fiduciaries under § 502(a)(3)); Silva v. Metro. Life Ins., 762 F.3d 711, 722 (8th Cir. 2014) (surcharge is available); Gearlds v. Entergy Servs. Inc., 709 F.3d 448, 451 (5th Cir. 2013) (same); McCravy v. Metro. Life Ins., 690 F.3d 176, 181 (4th Cir. 2012) (same).

Defendants argue that Plaintiffs cannot satisfy Rule 23's commonality, typicality, or predominance requirements on this Count because each putative Subclass member will need to show that he or she detrimentally relied on the alleged misrepresentations.  (See Defs.' Resp. 13–23, Doc. No. 57.)  I disagree.

### Detrimental Reliance

The Third Circuit has explicitly held that "'detrimental reliance' [i]s an *element* of a [§

404] breach of fiduciary [duty misrepresentation] claim." Burnstein v. Ret. Acct. Plan for Emps. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 387 (3d Cir. 2001) (emphasis supplied); see also Shook v. Avaya, Inc., 625 F.3d 69, 73 (3d Cir. 2010); In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 229 (3d Cir. 2009).  Plaintiffs argue, however, that the Supreme Court's recent decision in CIGNA Corp. v. Amara eliminates this detrimental reliance requirement for § 404 misrepresentation claims in which reformation and surcharge are sought. (Pl.'s Mem. 13–14, Doc. No. 56-1); 563 U.S. 421 (2011).

In *CIGNA*, the Supreme Court considered whether plaintiff-beneficiaries could seek equitable relief for alleged SPD misrepresentations under §§ 102 and 104 (analogous to Count VIII here).  The Court ruled that § 502(a)(3) allows equitable relief where: (1) a defendant violates ERISA; and (2) the requested relief is "appropriate."  CIGNA, 563 U.S. at 443.  The Court identified estoppel, surcharge, and reformation as possible remedies, and considered the appropriate standard for determining whether an ERISA plaintiff has been injured, noting that "the relevant standard of harm will depend upon the equitable theory by which the District Court provides relief."  Id. at 424, 443.  Because §§ 102, 104 and 502(a)(3) do not require plaintiffs to show "any particular standard of harm," the Supreme Court "[l]ook[ed] at the law of equity," determined that there was "no general principle that 'detrimental reliance' must be proved before a remedy is decreed," and ruled that the elements a plaintiff must establish to obtain "appropriate equitable relief" depend on the specific equitable relief requested.  Id.  The Court reasoned that although some equitable remedies, like estoppel, require a showing of detrimental reliance, other remedies, like reformation and surcharge, generally do not.  Id. at 443–44.

Plaintiffs argue that *CIGNA* applies here, and that they need not show detrimental reliance to bring their § 404 fiduciary duty misrepresentation claim.  (Pls.' Br. 13–14; Apr. 18, 2019 Hr'g

Tr. 15:11–16:14.)  Defendants argue that *CIGNA* does not apply because: (1) it did not involve a § 404 claim; (2) the *CIGNA* Court's discussion of equitable remedies is dictum; and (3) courts in this District continue to require plaintiffs to show detrimental reliance on § 404 claims, regardless of the equitable remedy sought.  (Defs.' Resp. 15–16; Apr. 18, 2019 Hr'g Tr. 28:12–29:3); Carr v. Int'l Game Tech., No. 09-584, 2012 WL 909437, at *4 (D. Nev. Mar. 16, 2012); see e.g., Galante v. Fin. Indus. Regulatory Auth., Inc., No. 16-5198, 2018 WL 2063748, at *6 (E.D. Pa. May 2, 2018); Romero v. Allstate Ins. Co., No. 01-3894, 2016 WL 6876307, at *13 (E.D. Pa. Nov. 22, 2016); Diener v. Renfrew Ctrs., No. 11-4404, 2015 WL 567339, at *7 (E.D. Pa. Feb. 10, 2015); (see also Apr. 18, 2019 Hr'g Tr. 29:1–3 ("[N]ineteen times post-*[CIGNA]* have courts in the Third Circuit said[] that detrimental reliance is an element of a fiduciary-misrepresentation claim.")).

I disagree with Defendants.  Even if the Supreme Court's discussion of equitable remedies is dictum, it remains highly persuasive.  McCravy, 690 F.3d at 181 n.2; see also Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 273 (3d Cir. 2007).  Moreover, none of the cases Defendants cite address class certification or consider the § 404 detrimental reliance requirement in light of *CIGNA*.  See also Goldenberg v. Indel, Inc., No. 09-5202, 2012 WL 12906332, at *6 (D.N.J. Feb. 28, 2012) (applying *CIGNA* to fiduciary duty misrepresentation claim).  In any event, the Third Circuit has not addressed whether plaintiffs must show detrimental reliance to obtain equitable relief on § 404 claims since *CIGNA*.  Nor has the Third Circuit ever explained the reason for the detrimental reliance requirement on § 404 claims.

Significantly, as Plaintiffs note, the Second Circuit has ruled that "[*CIGNA*'s] reasoning mandates the conclusion that detrimental reliance need not be shown where a plaintiff alleging a violation of § 404(a) seeks plan reformation under § 502(a)(3)."  (Apr. 18, 2019 Hr'g Tr. 15:17–21); see Osberg, 862 F.3d at 211–12.  The *Osberg* Court thus rejected pre-*CIGNA* precedent

13

requiring plaintiffs to show detrimental reliance to assert a § 404 fiduciary duty misrepresentation claim. Osberg, 862 F.3d at 212 n.12 (citing Bell v. Pfizer, 626 F.3d 66 (2d Cir. 2010)). Applying *CIGNA*, the *Osberg* Court held that plaintiffs could seek plan reformation based on alleged fiduciary misrepresentations without a showing of detrimental reliance because "neither the statutory text of § 404(a) nor the equitable remedy of reformation require[d] [such] a showing." Id. at 211–12. The Eighth Circuit has similarly ruled that, after *CIGNA*, plaintiffs need not show detrimental reliance when they seek surcharge for an alleged § 404 violation. See Silva, 762 F.3d at 722.

I find the reasoning of the Second and Eighth Circuits persuasive, and conclude that, in light of *CIGNA*, Plaintiffs need not show § 404(a) detrimental reliance to seek reformation and surcharge under § 502(a)(3).

***Commonality***

Defendants argue that even if *CIGNA* eliminates § 404's detrimental reliance requirement, Plaintiffs cannot satisfy commonality because putative Subclass members will still need to show detrimental reliance to obtain reformation or surcharge. (Defs.' Resp. 17; Apr. 18, 2019 Hr'g Tr. 32:8–33:7.) Defendants thus ignore *CIGNA*'s gravamen.

Reliance is not a prerequisite for reformation. Before reformation may be ordered, the plaintiff must show either: (1) "mutual mistake of both parties"; or (2) that "one party is mistaken and the other commits fraud or engages in inequitable conduct." Amara v. CIGNA Corp., 775 F.3d 510, 525 (2d Cir. 2014). "Mistake is measured by the plan participants' reasonable expectations of the plan—an objective standard susceptible to proof through common questions of fact." Amara v. CIGNA Corp., 925 F. Supp. 2d 242, 262 (D. Conn. 2012), aff'd 775 F.3d 510 (2d Cir. 2014). The Second Circuit has thus ruled that "plaintiffs can prove ignorance of a contract's

14

terms through generalized circumstantial evidence in appropriate cases[,] [and that] [s]uch proof may be more than sufficient . . . in certain cases where . . . defendants have made uniform misrepresentations about an agreement's contents and have undertaken to conceal its effect." Amara, 775 F.3d at 529.

Defendants suggest that reformation is unwarranted here because: (1) Plaintiffs do not allege that Defendants engaged in any intentional misconduct; and (2) Cunningham purportedly "admitted in his deposition" that none of the written Plan documents were misleading. (See Defs.' Resp. 16 n.18; Apr. 18, 2019 Hr'g Tr. 27:13–28:11.) These arguments are premature. See Pearce v. Chrysler Grp. LLC Pension Plan, 893 F.3d 339, 348 (6th Cir. 2018) ("Fraud . . . has a broader meaning in equity [than at law] and intention to defraud or misrepresent is not a necessary element."); Frommert v. Becker, 153 F. Supp. 3d 599, 608 (W.D.N.Y. Jan. 5, 2016) (same); see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465–66 (2013) ("Merits questions may be considered . . . *only* to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (emphasis supplied)); Hydrogen Peroxide, 552 F.3d at 311–12 (same).

Moreover, reliance is also not a prerequisite for surcharge, which is available "upon a showing of actual harm—proved by a preponderance of the evidence." Amara, 925 F. Supp. 2d at 256; see also Kenseth v. Dean Health Plan, Inc., 722 F.3d 869, 879 (7th Cir. 2013). Although "actual harm" may be shown by detrimental reliance, it may also be shown by "the loss of a right protected by ERISA or its trust-law antecedents." CIGNA, 563 U.S. at 423; Amara, 925 F. Supp. 2d at 257 ("[A]ctual harm" means "those losses (or harms or injuries) that a plaintiff-beneficiary can establish were caused by the fiduciary breach."). Courts have thus allowed plaintiffs to seek surcharge on a class-wide basis. See Osberg v. Foot Locker, Inc., No. 07-1358, 2014 WL 5796686,

at *5 (S.D.N.Y. Sept. 24, 2014); cf. Amara, 925 F. Supp. 2d at 262 (class-wide determinations include: (1) whether "[p]laintiffs met their initial burden of establishing that [defendant] breached its fiduciary duty and that [p]laintiffs suffered a 'related loss'; and (2) whether defendant has "disestablish[ed] the causal connection between its breach and [p]laintiffs' related loss").

Even if detrimental reliance were required to establish a § 404 violation or seek equitable relief, such reliance could be presumed on a class-wide basis.  Plaintiffs allege that Defendants breached their fiduciary duty by "promising in SPDs, the Offering Memorandum, and other communications" that the Subclasses would be able, *inter alia*, to hold Wawa stock until age 68. (Compl. ¶ 171.)  "Liability or non-liability as to [this] claim reasonably could be based on a factfinder's assessment of these common, class-wide communications."  Osberg, 2014 WL 5796686, at *4.

Defendants argue that reliance cannot be presumed class-wide because Cunningham purportedly "conceded [at his deposition] that his claim to hold Wawa stock until age 68 [is] . . . predicated . . . only [on] oral representations," which raise individualized issues of proof.  (Defs.' Resp. 3, 18–22; Apr. 18, 2019 Hr'g Tr. 27:15–21, 29:7–12.)  There is no evidence, however, to suggest that these "oral statements" differed from Defendants' written, class-wide statements giving rise to Plaintiffs' claims.  (Compare 2011 SPD 9, 2014 SPD 12 (former employees could hold Wawa stock until age 68) with Cunningham Dep. 48:1–20, Doc. No. 57-2 (recalling unidentified "oral statements made during [a] road show in 2003 or 2004 that would support [his] claim that [he] had a right to hold Wawa stock to age 68"); see also Apr. 18, 2019 Hr'g Tr. 17:16–18 (Pls.: "[T]hese are oral statements[] that reaffirm what was written in the documents.  They're consistent with the documents.").)

To the extent Defendants argue that Cunningham is not an adequate Class representative

because he purportedly relied on oral representations, I disagree.  Cunningham received the same

written communications as putative Subclass members, and like those putative Subclass members,

seeks relief for Defendants' alleged misrepresentations in those written communications.  Cf.

Knight v. Midland Credit Mgmt. Inc., No. 17-3118, 2019 WL 1516941, at *18 (E.D. Pa. Apr. 5,

2019).

Defendants also argue that reliance cannot be presumed because the proposed Class

representatives reviewed class-wide documents and relied on Defendants' representations

regarding their rights to differing degrees.  (Defs.' Resp. 22–23.)  Courts have rejected this

argument, however, in cases where Defendants consistently made the same misleading statements.

As the *CIGNA* Court reasoned:

> [I]t is not difficult to imagine how the failure to provide proper summary
> information, in violation of the statute, injured employees even if they did not
> themselves act in reliance on summary documents—which they might not
> themselves have seen—for they may have thought fellow employees, or informal
> workplace discussion, would have let them know if, say, plan changes would likely
> prove harmful.  We doubt that Congress would have wanted to bar those employees
> from relief.

CIGNA, 563 U.S. at 444.  Once again, to the extent Defendants argue that Cunningham relied on

misleading "oral statements," there is no evidence to suggest that those statements differed from

Defendants' allegedly misleading written statements.  Cf. Moyle v. Liberty Mut. Ret. Benefit Plan,

823 F.3d 948, 964–65 (9th Cir. 2016) (certifying class, despite contention that plan participants

did not receive or rely on the same misrepresentations because alleged representations were made

on a uniform and class-wide basis).  In these circumstances, I conclude that reliance may still be

presumed on a class-wide basis.

In conclusion, Plaintiffs need not show detrimental reliance to seek reformation or

surcharge on Count V.  Even if they did, such reliance could be presumed on a class-wide basis,

rendering Count V amenable to class treatment.  Cf. Osberg, 2014 WL 5796686, at *4.

*Typicality*

Defendants base their typicality challenge respecting Count V largely on the same grounds as they did their commonality challenge.  (See Defs.' Resp. 23.)  The typicality challenge thus fails for similar reasons.  "Where an ERISA complaint alleges . . . plan-wide misrepresentations, courts have found the typicality requirement satisfied."  Schering-Plough, 2008 WL 4510255, at *7 (collecting cases).  Defendants purportedly misrepresented in class-wide communications Plaintiffs' right to hold Wawa stock.  As I have discussed, this allegation does not require Plaintiffs to show detrimental reliance.  Accordingly, their claims are typical of the Subclass.

*Rule 23(b)*

Defendants also suggest that Count V cannot be certified under Rule 23(b)(3).  (Defs.' Resp. 17 n.22.)  Because I conclude that it may be certified under Rule 23(b)(2), I need not address this contention.  Stoetzner, 897 F.2d at 119; Mehling, 246 F.R.D. at 475 n.6.

Through their alleged misrepresentations, Defendants have "acted or refused to act on grounds that apply generally to the [Sub]class, so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the [Sub]class as a whole."  Fed. R. Civ. P. 23(b)(2); see Cottillion, 2013 WL 5936368, at *6.  "Reformation in this context is essentially 'a declaration of the rights that the plan confers and an injunction ordering [the defendant] to conform the text of the plan to the declaration' from which 'monetary benefits flow as a necessary consequence.'"  Amara, 775 F.3d at 523 (quoting Johnson v. Meriter Health Servs. Emp. Ret. Plan, 702 F.3d 364, 371 (7th Cir. 2012)).  Indeed, at bottom, Plaintiffs seek a declaration of rights that the ESOP purportedly confers—namely, the right to hold Wawa stock through age 68—and an injunction ordering Defendants to conform the text of that Plan to the declaration (i.e., reformation).  Monetary relief necessarily flows as a consequence of this equitable relief.  This remedy is thus

18

amenable to class treatment.  Id.

In conclusion, I will certify the Retired Employee Subclass to pursue Count V.

## C. Count VIII

Plaintiffs here allege that the Committee Defendants impermissibly furnished materially misleading SPDs to both the Retired Employee Subclass and the Terminated Pre-2014 Employee Subclass.  (Compl. ¶¶ 196–203); 29 U.S.C. § 1022.  They again seek reformation and surcharge. Pearce, 893 F.3d 346–47 (reformation is a viable remedy); Skinner v. Northrup Grumman Ret. Plan B., 673 F.3d 1162, 1165 (9th Cir. 2012) (same for surcharge).  Defendants challenge Count VIII certification on substantially the same grounds as Count V.

Defendants again argue that Plaintiffs cannot make out commonality and typicality with respect to Count VIII because they cannot show that they detrimentally relied on the SPDs.  (Defs.' Resp. 13–23.)  Once again, I disagree.  Unlike its rulings on § 404 fiduciary duty misrepresentation claims, the Third Circuit has never held that §§ 102 and 104 misrepresentation claims require a showing of detrimental reliance.  Moreover, the claim in CIGNA—that the plaintiff participants were entitled to additional benefits because the defendant proffered materially misleading SPDs— is analogous to Count VIII here.  See Amara, 563 U.S. at 424, 443–44.  The CIGNA Court's determination that detrimental reliance is not necessarily required to obtain relief thus applies here. See also McCravy, 690 F.3d at 181 n.2 ("Even assuming for the sake of argument that [CIGNA's discussion of § 502(a)(3) is dicta], we cannot simply override a legal pronouncement endorsed just last year by a majority of the Supreme Court.").

Plaintiffs again seek reformation and surcharge under § 502(a)(3) for Defendants' alleged violations of § 102.  As I have discussed, these remedies are amenable to class-wide proof—i.e., the SPDs—rendering this claim appropriate for class treatment.  (See Apr. 18, 2019 Hr'g Tr. 6:8–

12; see also Feb. 27, 2019 Stipulation ¶ 11.)  To the extent Defendants contend that Plaintiffs will likely be unable to obtain these remedies, such a challenge is unripe at the class certification stage. Amgen Inc., 568 U.S. at 465–66; see also Hydrogen Peroxide, 552 F.3d at 311–12.

In these circumstances, I will certify the Subclasses to pursue Count VIII.

### D.  Count VII

Plaintiffs here allege that the terms of the Plan, including the right to hold Wawa stock until age 68, became fixed when Plaintiffs were terminated and their rights vested.  (Compl. ¶¶ 190–95.)  The Plan Amendment thus purportedly violated Plaintiffs' rights under the Plan in effect at the time of the Amendments.  I denied Defendants' Motion to dismiss this claim, ruling that Defendants had amended the Plan to eliminate the right to hold Wawa stock, and the Plan's reservation of Defendants' right to amend was ambiguous as to whether it permitted amendments after participants' rights had vested.  (Order, Doc. No. 45; see also Orders, Doc. Nos. 58, 84, Civ. No. 16-497.)  Defendants challenge certification on commonality and typicality grounds, as well as on the merits.

***Merits***

Defendants argue that Count VII should not be certified because it is meritless.  In support, they offer: (1) Plaintiff Cunningham's deposition testimony that Defendants had the right to amend the Plan; and (2) Defendant Eckhardt's deposition testimony that "it's Wawa's position [that] . . . Wawa is permitted to amend the [P]lan or terminate the [P]lan."  (Defs.' Resp. 7–8; see also Cunningham Dep. 11:18–12:15 (admitting that Wawa could amend the Plan, but "understanding" that "it would not divest [him] of what [he already] held").)  At the certification hearing, Plaintiffs challenged Defendants' merits argument as premature and baseless.  (Apr. 18, 2019 Hr'g Tr. 4:7– 8, 4:13–5:1, 7:7–8:1.)  I agree.

20

The Third Circuit has advised that, at class certification, a "rigorous analysis may include a preliminary inquiry into the merits." Hydrogen Peroxide, 552 F.3d at 317; Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168 (3d Cir. 2001). As the *Hydrogen Peroxide* Court explained, however, "an examination of the elements of plaintiffs' claim is sometimes necessary, not in order to determine whether each class member states a valid claim, but instead to determine whether the requirements of Rule 23—namely, that the elements of the claim can be proved 'through evidence common to the class rather than individual to its members'—are met." Sullivan, 667 F.3d at 306 (citing Hydrogen Peroxide, 552 F.3d at 311–12). The Supreme Court has further cautioned that "[m]erits questions may be considered . . . *only* to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc., 568 U.S. at 465–66 (emphasis supplied); see also Williams v. Jani-King of Philadelphia Inc., 837 F.3d 314, 322 (3d Cir. 2016) ("Although the court must undertake a rigorous analysis at the certification stage and consider some merits-related issues, the class certification stage is not the place for a decision on the merits."); Harnish v. Widener Univ. Sch. of Law, 833 F.3d 298, 305 (3d Cir. 2016) ("[T]he task for the District Court [is] to determine whether the plaintiffs' proposed class-wide theories *and* evidence would be sufficient to address the predominant issues in the case.").

Defendants do not attempt to demonstrate any overlap between the merits of Count VII and class certification. Instead, Defendants ask me, yet again, to revisit my decisions denying their motions to dismiss this claim, now based on minimal discovery. (See Doc. No. 45; Doc. Nos. 58, 84, Civ. No. 16-497.) Moreover, after careful review of the record (and as discussed further below), I conclude that Plaintiffs' unilateral contract claim is susceptible to class-wide resolution: i.e., the same evidence will apply for each class member's claim and will raise the same legal issue

as to that claim: "whether there was a contract, whether there was a breach, and any related issues concerning language ambiguity." Zeno v. Ford Motor Co., Inc., 238 F.R.D. 173, 197 (W.D. Pa. 2006). The issue of whether the language is ambiguous is thus a merits question "that has no bearing on whether joinder of [S]ubclass members is impracticable." Bland v. PNC Bank, NA, No. 15-1042, 2016 WL 10520047, at *13 (W.D. Pa. Dec. 16, 2016); see also Hurtado v. Rainbow Disposal Co., No. 17-01605, 2019 WL 1771797, at *5 (C.D. Cal. Apr. 22, 2019). Accordingly, I will not decline to certify Count VII on the merits.

### *Commonality*

In the alternative, Defendants contend that because the reservation of rights clause is ambiguous, "consideration of individualized extrinsic evidence"—including the intent of beneficiaries—"is necessary to identify the scope of those contractual relationships and attendant contractual rights." (Defs.' Resp. 9.) Defendants argue that the class certification record establishes that the Plan "expressly conditioned the accrual of benefits on performance." (Id. at 10.) This condition purportedly requires a different analysis for each putative Subclass member, precluding a finding of commonality. (Id.)

Plaintiffs have objected to this contention, arguing that the Plan does not contain a duty of good performance, and that "the employee who is the top performer at Wawa has the same rights a[s] the worst-performing employee at Wawa, so long as they have the exact same hours and time of service." (Apr. 18, 2019 Hr'g Tr. 8:6–9:11.) I agree. Indeed, Defendants have not argued or presented evidence that any "poor performers" went unpaid during their employment, and their corporate representative admitted that before the 2015 Amendment, employees terminated for cause were treated identically under the Plan as those terminated for any other reason. (See Peterson Dep. 120:22–121:25.) Moreover, after three years, the Plan provides that a portion of an

employee's benefit is no longer forfeitable—directly contradicting Defendants' assertion that Plan benefits could be subsequently forfeited for poor performance.  (See ESOP (eff. Jan. 1, 2004) Art. VI § 6.3.)  The Plan thus provides that the quality of a given Subclass member's performance while employed does not affect the entitlement to benefits.  See Fields v. Thompson Printing Co., 363 F.3d 259, 272 (3d Cir. 2004) (because contract contained "no differentiation between termination with cause and termination without cause, [plaintiff's] benefits are to continue in any event.  Thus, under the express terms of the agreement, [plaintiff] has a right to benefits in the event that he is terminated for cause").

As I have discussed, the central question presented by Count VII is whether the Plan's reservation of rights clause permitted the 2014 and 2015 Plan Amendments.  The meaning of this clause is the same as to all terminated employee participants and can thus be resolved on a class-wide basis.  Cottillion, 2013 WL 5936368, at *3 (W.D. Pa. Nov. 5, 2013); (commonality found in suit challenging elimination of plan benefits); United Steelworkers of Am. v. Ivaco, 216 F.R.D. 693, 696 (N.D. Ga. 2002) (commonality satisfied in dispute over amendment and modification of ERISA plan where "defendants' acts of cancelling the plans was done uniformly and affected each . . . beneficiary . . . in the same manner").  "The mere fact that [P]laintiff[s] and [D]efendant[s] might need to resort to parol evidence to prove or defend against [P]laintiffs' claim" alone does not preclude a finding of commonality.  Zeno, 238 F.R.D. at 195-96.

*Typicality*

Defendants also argue that Plaintiffs cannot show typicality with respect to Count VII because Cunningham, DiDonato, and potentially other putative Subclass members signed Separation Agreements, releasing this claim.  (Defs.' Resp. 12–13.)  I disagree.

Cunningham and DiDonato's Releases apply only to claims that existed when the Releases

were signed in 2011 and 2013: well before Wawa implemented the 2014 and 2015 Amendments. (See Exs. E & F to Defs.' Resp., Doc. Nos. 57-6, 57-7 ("It is important for you to understand that accepting the terms of this letter agreement will NOT waive any future rights or claims that may arise after the date that this letter agreement is signed."). To the extent DiDonato's Release also "authorized Wawa to repurchase [his] shares," it is unclear whether that authorization extended to his ESOP shares. (See Ex. E to Defs.' Resp.) Indeed, DiDonato allegedly "held [Wawa] stock outside the ESOP," and the Release separately provided that his ESOP benefits would be "paid . . . in accordance with the terms of the . . . plan." (See Ex. E to Defs.' Resp. ¶ 5; Apr. 18 Hr'g Tr. 10:13–17; see also Apr. 18, 2019 Hr'g Tr. 11:9–15 (DiDonato "made a phone call before he signed [the Release] and . . . was told[] that his rights under the ESOP would still be governed by the terms of the plan."). In these circumstances, I am not prepared to conclude that the Release bars DiDonato's claim, nor is there any indication, at this stage, that the terms of DiDonato's release will make him atypical. Cf. Wildman v. Am. Century Servs, LLC, No. 16-00737, 2017 WL 6045487, at *5 (W.D. Mo. Dec. 6, 2017).

That "[o]ther putative [S]ubclass members may well have similarly released claims" also does not preclude class certification. (Defs.' Resp. 13.) At this time, there is no evidence actually confirming that any putative Subclass members signed valid releases. Cf. Neil v. Zell, 275 F.R.D. 256, 261 (N.D. Ill. 2011) (citing Schering Plough, 589 F.3d at 598) (certifying class despite allegation that class members signed releases); Yost v. First Horizon Nat. Corp., No. 08-2293, 2011 WL 2182262, at *11–12 (W.D. Tenn. June 3, 2011) (certifying class where it "remain[ed] to be seen exactly how many class members actually signed such releases"); In re Williams Cos. ERISA Litig., 231 F.R.D. 416, 423 (N.D. Okla. 2005) (certifying class where no named plaintiffs and only 10% of the class signed releases). "Nor is there any indication," at this time "that the

issue of the validity of [other putative Subclass members'] releases will overwhelm the litigation."
In re Aquila ERISA Litig., 237 F.R.D. 202, 210–11 (W.D. Mo. 2006).  Accordingly, I conclude
that Count VII is appropriate for class treatment.  "The Parties are free, however, to litigate this
issue and request decertification of [Sub]class members who signed releases, if such an action
becomes appropriate." Aquila, 237 F.R.D. at 211; see also Williams, 231 F.R.D. at 423; accord.
Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is
entered, the judge remains free to modify it in light of subsequent developments in the litigation.")

## VI.    CONCLUSION

In sum, I will certify: (1) the proposed Class to pursue Counts I–IV, IX, and X; (2) the
proposed "Terminated Pre-2014 Employee Subclass" to pursue Counts VI and VIII; and (3) the
"Retired Employee Subclass" to pursue Counts V–VIII.

**AND NOW**, this 2nd day of July, 2019, upon consideration of Plaintiffs' Motion to Certify
Class (Doc. No. 56), Defendants' Response (Doc. No. 57), and all related stipulations and
submissions, as well as the arguments presented at the April 18, 2019 hearing, it is hereby
**ORDERED** that Plaintiffs' Motion (Doc. No. 56) is **GRANTED** as follows:

1. The case is hereby certified as a class action on behalf of the following individuals:

    a. On Counts I–IV, IX, and X (the "Class"): All Participants in the Wawa, Inc.
       Employee Stock Ownership Plan ("Wawa ESOP") with account balances greater
       than $5,000.00 as of the date that they terminated employment whose accounts
       were liquidated on or after September 12, 2015 and the beneficiaries of such
       participants;

    b. On Counts VI and VIII (the "Terminated Pre-2014 Employee Subclass"): All
       Participant members of the Class who were employed by Wawa and participated in

the ESOP before January 1, 2014 and who terminated employment on or after January 1, 2015 except for Participants whose accounts were liquidated due to death, disability or a voluntary request for distribution, and the beneficiaries of such participants;

    c. On Counts V–VIII (the "Retired Employee Subclass"): All Participant members of the Class who Retired between January 1, 2011 and December 31, 2014 except for Participants whose accounts were liquidated due to death, disability or a voluntary request for distribution, and the beneficiaries of such Participants;

2. Plaintiffs have pled the following claims in their Complaint:

    a. Count I alleges that the Trustee and Committee Defendants breached their fiduciary duties by authorizing the ESOP's sale of Wawa stock in the ESOP accounts of Plaintiffs and the Class at a price below fair market value;

    b. Count II alleges that the Trustee Defendants and Wawa unlawfully caused the Plan to engage in a related party transaction (the forced sale) at a price below fair market value;

    c. Count III alleges that the Trustee Defendants unlawfully caused the Plan to engage in a related party transaction (the forced sale) for inadequate consideration;

    d. Count IV claims that the Trustee and Committee Defendants breached their fiduciary duties by authorizing the forced sale because the sale failed to follow Plan § 11.2, which prohibits any Plan transfers that decrease the value of the Plan;

    e. Count V claims that the Trustee and Committee Defendants breached their fiduciary duties by misrepresenting that terminated employee participants could hold Wawa stock in their ESOP accounts until age 68;

f.   Count VI alleges that the 2014 and 2015 Plan Amendments violated the anti-cutback provision of ERISA § 204(g) (as to the distribution of accounts);

g.   Count VII claims that Defendants violated ERISA by unilaterally amending the terms of the ESOP after Plaintiffs and the Class completed performance;

h.   Count VIII alleges that the Committee Defendants provided inaccurate information in Summary Plan Descriptions;

i.   Count IX claims that Wawa breached its fiduciary duties by failing to monitor the Trustee and Committee Defendants' activities; and

j.   Count X claims that to the extent that the Plan attempts to disclaim liability of its fiduciaries for fiduciary breaches, that provision is void as a matter of public policy;

3.   The Court finds that Counts I–X satisfy the requirements of Fed. R. Civ. P. 23(a) as follows:

a.   Because the Class consists of over 1,000 individuals, and the Subclasses each consist of hundreds of members, joinder of all Class members would be impracticable;

b.   The Certified Claims involve common questions of law and fact.  The Certified Claims all contest either the validity of the 2014 and 2015 Amendments or the calculation of the fair market value of Wawa stock at the time of the liquidation. The 2014 and 2015 Amendments were applied uniformly to each Class and Subclass member, which requires resolution of the same factual and legal issues for each individual.  The Certified Claims also allege that Defendants breached their fiduciary duties by making material misrepresentations in class-wide communications, transferring Class and Subclass members' accounts, in determining fair market value for Wawa stock, and in attempting to disclaim

27

liability to fiduciary breaches in the Plan;

c.   With respect to the Certified Claims, Plaintiffs' claims are typical of the claims of the Class and Subclasses and seek the same relief.   Plaintiffs Cunningham, Ciuffetelli, Rucki, and DiDonato were all participants in the ESOP until their shares were liquidated in the forced sale.   Defendants' conduct—in adopting and implementing the 2014 and 2015 Amendments—was identical as to Plaintiffs and each Class and Subclass member.   Defendants have not raised any unique defenses against Plaintiffs;

d.   Plaintiffs and their counsel have no interests antagonistic to the Class or Subclasses, and Plaintiffs have retained counsel with extensive experience litigating ERISA class actions, including ESOP cases.   Plaintiffs and their counsel will fairly and adequately protect the interests of the Class and Subclasses;

4.   Counts I, II, III, IV, VI, IX, and X meet the requirements of Fed. R. Civ. P. 23(b)(1) because the Plan administrator is required by law to interpret and consistently apply the terms of the Plan to all similarly-situated participants.   As such, varying or inconsistent adjudications regarding the 2014 and 2015 Amendments and the fair market value of Wawa stock would establish incompatible standards of conduct.   For similar reasons, an adjudication regarding the interpretation of the Plan as to Plaintiffs would, as a practical matter, adjudicate the same terms with respect to the other participants.   Additionally, the relief sought by Plaintiffs supports certification under Rule 23(b)(1);

5.   Counts I–X meet the requirements of Fed. R. Civ. P. 23(b)(2).   Defendants have acted on the same grounds as to all members of the Class and Subclasses by passing the 2014 and 2015 Amendments and using the same fair market value of Wawa stock for all the Class

and Subclass members' shares.  In addition, Plaintiffs' claims primarily seek declaratory and injunctive relief: a declaration that the 2015 Amendment is invalid and a declaration that Defendants breached their fiduciary duties in implementing the Amendment, in disclosing the terms of the Plan to participants, in determining the fair market value to be paid for Wawa stock, and in transferring participants' accounts.  The primary relief sought by invalidation of the 2014 and 2015 Plan Amendments is declaratory and injunctive, and would be accomplished by declaring the Amendment invalid, rescinding the liquidation of Class and Subclass members' Wawa stock, restoring the accounts of the Class and Subclasses in the Wawa ESOP, and reforming the Plan.  To the extent that monetary relief is awarded, any monetary relief would flow from the declaratory relief;

6.  In light of the foregoing findings and conclusions, the following are certified as a class action pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2) (as set forth above):

    a.  On behalf of the Class in Paragraph 1: Counts I–IV, IX, and X;

    b.  On behalf of the Terminated Pre-2014 Employee Subclass in Paragraph 1: Counts VI and VIII; and

    c.  On behalf of the Retired Employee Subclass in Paragraph 1: Counts V–VIII.

7.  Pursuant to Rule 23(a)(4): (1) Plaintiffs John Cunningham, David Ciuffetelli, Benjamin DiDonato, and John Rucki, Jr. are hereby appointed representatives of the Class; (2) Plaintiffs Ciuffetelli and Rucki are hereby appointed representatives of the Terminated Pre-2014 Employee Subclass; and (3) Plaintiffs Cunningham and DiDonato are hereby appointed representatives of the Retired Employee Subclass;

8.  Pursuant to Rule 23(g)(1), the law firms of Feinberg Jackson Worthman & Wasow LLP, Block & Leviton LLP, and Donahoo & Associates, P.C. are appointed as Counsel for the

Class and Subclasses.  Cohen Milstein Sellers & Toll, PLLC is appointed Liaison Counsel

for the Class and Subclasses.

**AND IT IS SO ORDERED**.

*/s/ Paul S. Diamond*

_____

July 2, 2019                                                Paul S. Diamond, J.