IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN J CUNNINGHAM, et al.,** : | |
| **Plaintiffs,** : | |
| : | |
| v. : | Civ. No. 18-3355 |
| : | |
| **WAWA, INC., et al.,** : | |
| **Defendants.** : | |

## ORDER

The Parties in this ERISA class action suit seek final approval of their proposed Settlement, and Class Counsel seek attorney fees. For the reasons that follow, I will grant both requests.

### I.   FACTUAL BACKGROUND

Plaintiffs are former employees of Wawa who participated in the Company's Employee Stock Ownership Plan, by which Wawa shares are allocated to individual Plan participants. (Am. Compl., Doc. No. 89, ¶¶ 1-3.) Plaintiffs alleged the ESOP to be "an important part of the compensation package for WAWA employees." (Id. ¶ 3.) Before 2014, the ESOP's written instrument provided that former employees were entitled to retain ownership of their Wawa stock until age 68. (Id. ¶ 4.)

In 2014, Wawa amended the ESOP and instructed the Trustee to "liquidate the ESOP Stock held in the ESOP Stock Account of any Participant who terminates employment with the Company and all Affiliated Companies on or after January 1, 2015." (Id. ¶ 5.) Wawa amended the ESOP again in 2015, directing the Trustee to liquidate shares for participants who had terminated employment or retired before January 1, 2015. (Id.)

Plaintiffs contend that these forced sales violated ERISA, and that Defendants undervalued the Wawa stock (which is not publicly traded) when compensating former ESOP participants for their shares. (Id. ¶ 6.)

In their Amended Complaint (Doc. No. 89), Plaintiffs set forth the following counts:

- Count I: The Trustee and Committee Defendants breached their fiduciary duties by authorizing the ESOP's sale of Wawa stock in the ESOP accounts of Plaintiffs and the Class at a price below fair market value. ERISA §§ 404(a)(1)(A), (B), (D), 29 U.S.C. § 1104(a)(1)(A), (B), (D);
- Count II: The Trustee Defendants and Wawa unlawfully caused the Plan to engage in a related party transaction (the forced sale) at a price below fair market value. ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D);
- Count III: The Trustee Defendants unlawfully caused the Plan to engage in a related party transaction (the forced sale) for inadequate consideration. ERISA § 406(b), 29 U.S.C. §1106(b);
- Count IV: The Trustee and Committee Defendants breached their fiduciary duties by authorizing the forced sale which failed to follow Plan § 11.2, a provision that prohibits any Plan transfers that decrease the value of the Plan. ERISA § 404(a)(1)(D), 29 U.S.C. §§ 1104(a)(1)(D);
- Count V: The Trustee and Committee Defendants breached their fiduciary duties by misrepresenting that terminated employee participants could hold Wawa stock in their ESOP accounts until age 68. ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A), (B), and (D);
- Count VI: Wawa breached ERISA's anti-cutback provision by eliminating terminated employees' rights to hold Wawa stock in the ESOP through age 68. ERISA §204(g), 29 U.S.C. § 1054(g);
- Count VII: The 2015 Amendment should be invalidated under unilateral contract principles because it violated the terms of the Plan then in effect. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

- <u>Count VIII</u>: The Committee Defendants violated ERISA by furnishing Summary Plan Descriptions that were materially misleading. ERISA §102, 29 U.S.C. § 1022;
- <u>Count IX</u>: Wawa breached its fiduciary duties by failing to monitor the Trustee and Committee Defendants' activities. ERISA § 404, 29 U.S.C. § 1104.
- <u>Count X</u>: The Plan's attempt to relieve its fiduciaries of liability for fiduciary breaches is void. ERISA § 410, 29 U.S.C. § 1110.

This case is substantially related to <u>Pfeifer v. Wawa</u>, Civ. No. 16-497, in which Plaintiffs made similar claims. The Class and Subclasses in the instant action explicitly exclude any members of the <u>Pfeifer</u> Class.

## II.   PROCEDURAL BACKGROUND

Plaintiffs initiated this action on August 8, 2018, while the proposed settlement in <u>Pfeifer</u> was pending. (Compl., Doc. No. 1.)

On January 10, 2019, I granted in limited part but primarily denied Defendants' Motion to Dismiss this case. (Doc. No. 45.)

On July 2, 2019, I granted Plaintiffs' Motion for Class Certification as follows:

- On Counts I–IV, IX, and X (the "Class"): All Participants in the Wawa, Inc. Employee Stock Ownership Plan ("Wawa ESOP") with account balances greater than $5,000.00 as of the date that they terminated employment whose accounts were liquidated on or after September 12, 2015 and the beneficiaries of such participants;
- On Counts VI and VIII (the "Terminated Pre-2014 Employee Subclass"): All Participant members of the Class who were employed by Wawa and participated in the ESOP before January 1, 2014 and who terminated employment on or after January 1, 2015 except for Participants whose accounts were liquidated due to death, disability or a voluntary request for distribution, and the beneficiaries of such participants; and
- On Counts V–VIII (the "Retired Employee Subclass"): All Participant members of the Class who Retired between January 1, 2011 and December 31, 2014 except for Participants

3

whose accounts were liquidated due to death, disability or a voluntary request for distribution, and the beneficiaries of such Participants.

Defendants appealed my Class Certification Order, challenging Subclass certification on Counts V, VII, and VIII. (Doc. No. 68.)

On December 27, 2019, after the Parties entered into a mediation, they informed me that they were negotiating a settlement. (Doc. No. 86.) The Third Circuit stayed Wawa's appeal of my Class Certification Order, pending settlement, and I stayed the instant matter. (Doc. No. 87.) After the Parties moved for preliminary approval of the Class Settlement Agreement, the Third Circuit extended the stay of the appeal. (Doc. Nos. 94, 98.)

I granted preliminary approval of the Settlement and Plaintiffs' proposed manner of Class Notice on November 18, 2020. (Doc. No. 99.) On the Parties' request, I also modified the Class definition to provide an end date for the Class period:

> All Participants in the Wawa, Inc. Employee Stock Ownership Plan ("Wawa ESOP") with account balances greater than $5,000.00 as of the date that they terminated employment whose accounts were liquidated between September 12, 2015 ***and December 31, 2019***, and the beneficiaries of such participants. (emphasis added)

I also modified the Class (and Subclasses) to exclude:

> (a) Defendant Trustees and members of the Defendant Committee and their immediate families; (b) the current officers and directors of Wawa and their immediate families; (c) members of the Pfeifer Class; and (d) these individuals' legal representatives, successors, heirs, and assigns . . . For purposes of the Settlement, "current officers and directors of Wawa" who are excluded will mean any person who was an officer or director of Wawa at any time from the date that this lawsuit was filed through the date of judgment.

Notice was sent to the 4,043 Class Members pursuant my Order, and found to be undeliverable to 65 individuals. (Salinas Decl., Doc. No. 111.)

Plaintiffs' Counsel now move for attorney's fees, and the Parties jointly move for final approval of the Settlement. (Doc. Nos. 102, 113.) I held a Final Settlement Hearing via videoconference on February 25, 2021. (Doc. No. 116.)

### III. DISCUSSION

#### A. Proposed Settlement

I have already described the settlement terms in my Preliminary Approval Order but will restate them here. (Preliminary Approval Order, Doc. No. 99; Settlement Agreement, Doc. No. 94-3.)

Defendants will pay $21,612,500 to the Class (an estimated $500 per share), up to 20% of the award amount and $175,000 for litigation expenses to Class Counsel, and a $25,000 incentive award to each Class Representative. Defendants will also pay settlement administration costs. Defendants additionally retained and paid for an Independent Fiduciary to review the settlement. (The Independent Fiduciary's Report is appended to the Motion for Settlement Approval. See Doc. No. 113-2.)

Funds will be distributed *pro rata* to the Class Members, with an additional 10% for Subclass Members. Members may receive an immediate distribution or may select to roll their settlement allocation over to a retirement plan such as an IRA. If a Class Member fails to make a selection, settlement proceeds will be distributed to his or her 401(k) account. Such an account will be created if the Member does not have one.

Class Members also agree to release Defendants from any claims regarding the adoption of the 2014 or 2015 Amendments, the valuation of ESOP's Wawa stock in 2015 through 2019, and the implementation of the 2014 or 2015 Amendments.

**B. Rule 23(e)**

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members." In re Aetna Inc. Sec. Litig., MDL No. 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan 4, 2001) (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768, 784 (3d Cir. 1995)).

**C. Fairness, Adequacy, and Reasonableness of Proposed Settlement**

I must determine that the settlement is "fair, reasonable, and adequate." In re Gen. Motors, 55 F.3d at 782. Fairness is presumed when: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." In re Cendant Corp. Litig., 264 F.3d 201, 233 n.18 (3d Cir. 2001). That presumption applies here, where (as discussed further below) the negotiations were at arm's length, there was substantial discovery, Class Counsel is experienced in similar litigation (including the substantially related Pfeifer mater), and no Class Members objected.

### The *Girsh* and *Prudential* Factors

In determining whether the settlement is fair, reasonable, and adequate, I must evaluate:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

Id. (citing Girsh v. Jensen, 521 F.2d 153, 157 (3d Cir. 1975)).

> When applicable, I should also consider:
>
> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998) (numbers added).

These factors compel approval of the settlement.

*Factor One: Complexity and Duration*

Like Pfeifer, this litigation—which encompasses ten counts, one main Class, two Subclasses, and falls under ERISA—is undoubtedly complex. See Wachtel v. Health Net, Inc., 482 F.3d 225, 237 (3d Cir. 2007) ("ERISA is an enormously complicated statute."); Pfeifer v. Wawa, Inc., 2018 WL 4203880, at *7 (E.D. Pa. 2018). This factor weighs in favor of approval, given the significant time and cost the Parties would expend in preparing for trial. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535–36 (3d Cir. 2004); In re Schering-Plough Corp. Enhance ERISA Litig., 2012 WL 1964451 (D.N.J. 2012).

*Factor Two: Reaction of the Class to the Settlement*

"In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors. Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" In re Gen. Motors, 55 F.3d at 812 (quoting Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)).

Here, no class members have objected to the Settlement Agreement. (Doc. No. 113 at 30.) Class Counsel also reported that they "had extensive communications with class members, and the feedback from the class members about the settlement has all been positive." (Tr. of Preliminary Approval Hr'g at 16:17–23.) Included in these communications were dozens of phone calls and emails, as well as a "virtual town hall meeting" via Zoom. (Mot. for Settlement Approval, Doc. No. 113, at 15.) This factor thus supports settlement approval. See Bodnar v. Bank of America, N.A., 2016 WL 4582084, at *3 (E.D. Pa. 2016) (finding that singular objection showed that this factor favored approval); Ripley v. Sunoco, Inc., 287 F.R.D. 300, 312 (E.D. Pa. 2012) (same).

*Factor Three: Stage of the Proceedings*

I must next examine "whether counsel had an adequate appreciation of the merits of the case before negotiating." In re Gen. Motors, 55 F.3d at 813–14. The proceedings must have produced "sufficient evidence to conduct meaningful, arms-length negotiations reflecting the relative strengths of the claims." Mehling v. New York Life Ins. Co., 248 F.R.D. 455, 460 (E.D. Pa. 2008).

This factor weighs in favor of the settlement. The Parties had completed class discovery and had begun merits discovery, including "substantial document productions by Defendants and non-parties, a Rule 30(b)(6) deposition of Wawa, the deposition of the Plaintiffs/Class Representatives, and depositions of two key fact witnesses." (Doc. No. 113-1, at 20.) Class Counsel had engaged two experts, and Defendants' Counsel provided draft expert reports to Class Counsel. (Id.)

Additionally, where, as here, the class was certified before settlement negotiations commenced, "courts can presume that the negotiations occurred at arm's length because they have

already determined that the counsel negotiating on behalf of the class adequately represents the class's interests." In re Gen. Motors, 55 F.3d at 814.

Finally, Class Counsel also benefitted from substantial discovery and litigation in Pfeiffer, which included many overlapping claims and defenses. (See 2018 WL 4203880, at *8.)

In sum, this factor weighs in favor of approval.

*Factors Four, Five, and Six:   The Risks of Establishing Liability and Damages and Maintaining Class Action Status Through Trial*

Here, I must "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." In re Warfarin, 391 F.3d at 537.

Class Counsel acknowledge that "Plaintiffs would have faced risks on class certification on some claims and on all claims on the merits and remedies." (Doc. No. 113 at 21–22.) Of particular concern was the status of class certification, as Defendants appealed my Class Certification Order to the Third Circuit.

Additionally, as I noted in Pfeifer, valuation issues regarding Wawa shares created "substantial challenges in establishing remedies." 2018 WL 4203880, at *8. As Class Counsel stated during the settlement hearing, "It is commonly known and commonly described that valuation is more an art that a science. Undoubtedly, the Defendants would have argued that our differences of opinion with them with respect to the valuation . . . [involved] judgment calls." (Tr. of Final Approval Hr'g at 9:14-24); see also California v. Teva Pharm. Indus., 2020 WL 3128027, at *10–11 (E.D. Pa. 2020) (emphasizing benefit of immediate recovery to eligible consumers in light of potential difficulties in calculating damages).

9

Because the litigation presented significant risks to Plaintiffs, factors four through six weigh in favor of approval.

*Factor Seven: Ability of the Defendants to Withstand a Greater Judgment*

Although there is scant evidence in the record regarding Defendants' ability to withstand a greater judgment, I am prepared to assume arguendo that Defendants' financial resources far outstrip the settlement amount. This nonetheless does not preclude approval. See In re Warfarin, 391 F.3d at 537–38 ("[T]he fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."). This factor thus weighs against approving the settlement.

*Factors Eight and Nine: Range of Reasonableness of the Settlement in Light of the Best Recovery and All the Attendant Risks of Litigation*

"The last two Girsh factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." In re Warfarin, 391 F.3d at 538.

The total Proposed Settlement amount is $21,612,500. (Doc. No. 113 at 26.) Class Counsel has estimated that the range of possible recoveries was $0 to $77 million for the Class Members and $0 to $120 million for the Subclass Members. (Id.) Accordingly, recovery represents 18.0% of the best possible outcome for the Class Members and 28.1% for the Subclass Members. (Id.) I agree with Class Counsel that these percentages are in line with other approved settlements. See, e.g., Stevens v. SEI Investments Co., 2020 WL 996418 (approving settlement where recovery represented 31% of maximum loss); In re Ikon Office Solutions, Inc. Sec. Litig.,

194 F.R.D. 166 (E.D. Pa. 2000) (approving 5.2% to 8.7% recovery "in light of the strength of the claims"); In re Royal Dutch/Shell Transport Sec. Litig., 2008 WL 9447623, at *21–22 (D.N.J. 2008) (18.2%).

Again considering the risks attendant to this litigation, the settlement falls within the range of reasonableness. These factors thus weigh in favor of settlement approval.

*Prudential Factors*

To the extent they are relevant, the Prudential factors also support approval.

"The first factor—maturity of the underlying substantive issues—substantially mirrors Girsh factor three, the stage of the proceedings." Teva Pharm. Indus., 2020 WL 3128027, at *13. Again, I find that the proceedings were sufficiently advanced to justify settlement approval.

I am not aware of any other claims by other classes or subclasses, nor is Class Counsel, rendering the second and third factors inapplicable. (See Barton Decl. ¶ 11.)

Although the Class and Subclass Members did not have the right to opt out, the fourth factor does not preclude approval, given that no Class Members objected to the settlement. See In re Flonase Antitrust Litig., 951 F. Supp. 2d 739, 745 (E.D. Pa. 2013).

Fifth, as I discuss below, I find the proposed attorneys' fees reasonable.

Finally, the procedure for processing claims is fair and reasonable. Class Members need not submit a claim form, as the distributions will be made automatically through the ESOP. (Doc. No. 113, at 30–31.)

### D. Fairness, Reasonableness, and Adequacy of Plan of Allocation

The Plan of Allocation must also be fair, reasonable, and adequate. Ikon, 194 F.R.D. 166 at 184. "Courts generally consider plans of allocation that reimburse class members based on the

type and extent of their injuries to be reasonable." In re Aetna Inc., 2001 WL 20928, at *12 (E.D. Pa. Jan. 4, 2001).

Here, funds will be distributed on a *pro rata* basis according to the number of Wawa shares previously held by the Class Member. (Doc. No. 113, at 12.) Members of the Subclass will receive an additional 10%. (Id.) I find this Plan of Allocation to be fair, reasonable, and adequate. It appropriately compensates Class Members based on the number of Wawa shares held, while accounting for the additional claim put forward by the Subclass Members (*i.e.* the right to continue holding Wawa stock until age 68).

### E. Fairness and Reasonableness of Requested Counsel Fees, Costs, and Class Representative Service Awards

Plaintiffs seek $4,322,500 (*i.e.* 20%) for Class Counsel, reimbursement of $153,851.05 in litigation expenses, and $25,000 service payments to each of the four Class Representatives. (Doc. No. 102.)

I "must conduct a 'thorough judicial review' of class counsels' request for attorneys' fees." Good v. Nationwide Credit, Inc., 314 F.R.D. 141, 161 (E.D. Pa. 2016) (quoting Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 118 (E.D. Pa. 2005)). Any fees and costs I award must be "reasonable." Fed. R. Civ. P. 23(h).

"There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method." In re Prudential, 148 F.3d at 333. In a common fund case such as this one, the percentage-of-recovery method is preferred, while the lodestar method is an appropriate cross check. Id.

In determining the reasonableness of a percentage fee award, I must examine factors that the Third Circuit set out in Gunter and Prudential:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement[.]

In re Diet Drugs, 582 F.3d 524, 541 (3d Cir. 2009) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000), and In re Prudential, 148 F.3d at 283) (internal citations omitted)).

Because many of these factors overlap with the Settlement approval factors discussed above, I will address them briefly.

First, the size of the fund is reasonable in light of the number of beneficiaries. The $21,612,500 divided across the roughly 4,000 Class Members yields a recovery of approximately $5,000 for each Member. Although this is lower than the recovery per person in Pfeifer, Class Counsel persuasively argues that this difference is reasonable because the Cunningham class contains a significantly larger portion of short-term employees who held fewer Wawa shares. (Feinberg Decl. ¶ 4.)

Second, as I have discussed, there are no objections in this case. The attorneys involved have shown skill and efficiency, as I noted when the same counsel litigated Pfeifer. Third, as I have stated in the settlement approval context, the complexity and duration of the litigation here counsels in favor of approving fees. Fourth, because Class Counsel operated on a contingency fee basis, there was a risk of nonpayment. See In re Schering-Plough, 2012 WL 1964451, at *7. Fifth, Class Counsel devoted significant time to this case: 2,200 hours in attorney and paralegal time, including the review of thousands of documents, taking five depositions, defending four depositions, and briefing the Class Certification issue. (Feinberg Decl. ¶ 6.) Sixth, the 20% fee—

13

the same as in Pfeifer—is also reasonable in light of fees in comparable cases. Potoski v. Wyoming Valley Health Care Syst., 2020 WL 207061, at *6 (M.D. Pa. 2020) ("[T]he Third Circuit has awarded fees ranging from 20% to 45% of the settlement value."); In re Lucent Technologies, Inc. Sec. Litig., 327 F. Supp. 2d 426, 454 (D.N.J. 2004) (granting 20% fee award). Eighth, there are no other groups involved in this case that expended efforts. Ninth, Class Counsel likely would have negotiated a higher percentage fee if the case was subject to a private contingent fee arrangement. Esslinger v. HSBC Bank Nevada, N.A., 2012 WL 5866074, at *14 (noting typical contingency agreements are between 30%-40% of recovery). Tenth and finally, as was true in Pfeifer, the Settlement is generally straightforward but contains an innovative element: it allows Class Members the opportunity to distribute their recovery to an IRA or other tax-qualified retirement plan. Regardless, the absence of an innovative element would not defeat approval. Id.

Lodestar Calculations

I will heed the Third Circuit's suggestion to cross-check the percentage award against the lodestar method. Gunter, 223 F.3d at 199. "[A] court determines the lodestar by multiplying the number of hours counsel reasonably worked on a client's case by a reasonable hourly billing rate for such services in a given geographical area provided by a lawyer of comparable experience."

Class Counsel presented the following fees, which yield a lodestar multiplier of 2.64:

| Firm Name | Hours | Hourly Rates | Total Fees |
|---|---|---|---|
| Feinberg, Jackson, Worthman & Wasow LLP | 963.90 | $250-$975 | $833,122.00 |
| Block & Leviton LLP | 1,081.20 | $235-$875 | $708,024.00 |
| Cohen Milstein Sellers & Toll PLLC | 37.75 | $290-700 | $21,842.50 |
| Richard Donahoo & Associates | 120.30 | $495-700 | $75,641.00 |
| | 2,203.15 | | $1,638,629.50 |

As I held in Pfeifer (where the lodestar value was 2.7), I am satisfied that the lodestar value falls within the range of reasonableness. In re Prudential, 148 F.3d at 341 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal quotations omitted); In re CertainTeed Fiber Cement Siding Litig., 303 F.R.D. 199 (E.D. Pa. 2014) (approving fees where lodestar multiplier was 2.6).

Moreover, Class Counsel's hourly rates are reasonable in light of the complexity of ERISA cases and the skill and experience of counsel. See Sarko Decl. ¶ 8 ("ERISA class actions usually require extensive research even for experienced attorneys, entail difficult discovery, and take many years to resolve. . . . Because of these factors, attorneys must charge substantial fees."); Porter Decl. ¶ 7 ("[Class Counsel's] rates are consistent with the rates charged by my firm and the national market for ERISA class action attorneys.").

In sum, I find Class Counsel's requested $4,322,500 fee award to be reasonable.

Litigation Expenses

Class Counsel also seek $153,851.05 in expenses under Rule 23(h). (Doc. No. 155); Fed. R. Civ. P. 23(h). This includes filing fees, eDiscovery costs, deposition expenses, mediation fees, and other similar, ordinary litigation expenses. (Feinberg Decl.; Supplemental Feinberg Decl.; Tr. of Final Approval Hr'g at 20:1–23.) I find these expenses to be reasonable and adequately documented. See In re Lucent, 327 F. Supp. 2d at 458.

Incentive Payments

The Parties propose a $25,000 payment to each Class Representative: John Cunningham, David Ciuffetelli, Benjamin DiDonato, and John Ricki, Jr. (Doc. No. 65.)

"Incentive payments may be approved to compensate class representatives for services they provide and risks they incur during the course of litigation as well as to reward the members for

15

the benefit they provide to the class and to the public." Galt v. Eagleville Hospital, 310 F. Supp. 3d 483, 496 (E.D. Pa. 2018).

Class Representatives sought legal counsel and helped initiated this class action after they learned of the Pfeifer action. (Feinberg Decl. ¶ 16.) All four attended meetings with Class Counsel, produced documents for discovery, attended the mediation (two in person and two telephonically), participated in depositions, and conferred with Class Counsel at night and on weekends. (Id.) In these circumstances, the proposed incentive payments are reasonable. See Pfeifer, 2018 WL 4203880, at *14–15.

### IV. CONCLUSION

I will approve the settlement, which is fair, adequate, and reasonable. I will also approve Class Counsel's request for attorney fees, expenses, and incentive payments. An appropriate Judgment follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____

April 21, 2021                                                Paul S. Diamond, J.